PHILIP MINER, Respondent, *v.* MAX REINHARDT, Appellant.

First Department, April 5, 1929.

*Bruce Bromley* of counsel [*John Preston Phillips* with him on the brief; *Cravath, deGersdorff, Swaine & Wood,* attorneys], for the appellant.

*James Marshall* of counsel [*Abraham Shamos* with him on the brief], for the respondent.

MARTIN, J. The plaintiff obtained a summary judgment against the defendant for the sum of $10,000 upon the first of two causes of action set forth in the complaint. To sustain this judgment it will be necessary to find that the plaintiff performed the contract on his part and that the defendant failed to comply with the terms thereof. Both causes of action must be considered on this appeal. They grow out of one contract, the clauses of which are not separate and distinct, but reciprocal and dependent.

In support of the motion for judgment the plaintiff selected and urged for consideration portions of the contract which gave him certain rights but disregarded other portions which limited or qualified those rights. Favorable excerpts from the testimony given on the examination before trial were also quoted but the portions thereof which qualified and explained that testimony were wholly ignored.

The contract provides as follows: " Miner engages Reinhardt for the purpose of producing and stage managing one or two plays and possibly one film during the season of 1925–1926 in the United States of America. One play is to be produced in Stony Point, State of New York, about September, 1926, one play is to be produced at the Public Auditorium of Cleveland, Ohio, about November, 1926, and the film (which is to be the film version of Max Reinhardt's ' Miracle ') is to be produced at a date to be agreed upon later.

" It is clearly understood that Miner is only obliged to bring about one of the aforesaid three productions."

At the time the contract was signed the plaintiff paid the defendant $10,000, which is stated to be as an advance payment on defendant's royalties to be earned from any of the three named productions.

After setting forth the aforesaid payment, the plaintiff quoted the

following clause: " In the event that Reinhardt should fail to appear in America on account of sickness, personal disability or any other cause whatsoever, he shall return to Miner the ten thousand dollars."

In the same paragraph preceding the clause just quoted, and as part thereof, the following will be found: " Should Miner fail to bring about any of the above-mentioned three productions, then the ten thousand dollars paid by him to Reinhardt will be forfeited. Otherwise the ten thousand dollars will be deducted from Reinhardt's royalties."

It is difficult to understand why this latter clause should have been wholly ignored in considering the plaintiff's right to a return of the $10,000 sued for in the first cause of action, especially in view of the fact that the defendant clearly stated that it was his contention that Miner failed to arrange for any of the above-mentioned productions.

Mr. Rudolph Kommer, the manager for Max Reinhardt, says that before he left New York in March, 1926, the plaintiff had not undertaken anything definite in the preparation of any one of the three productions mentioned in the agreement of September 2, 1925; that the plaintiff had already abandoned two of the contemplated three productions on the ground that they were impossible. These two productions were the film version of " The Miracle " and a classical play that was to be directed by Max Reinhardt at a theatre which the plaintiff had intended to build at Stony Point, N. Y. Kommer says the film version of " The Miracle " had to be abandoned by plaintiff because he could not secure the film rights which belonged to Joseph Menschen and A. H. Woods. The production of the classical play at Stony Point had to be abandoned by plaintiff because the theatre which he had intended to build there and in which Max Reinhardt was to direct the play had never advanced beyond the laying of the corner stone. After the lapse of a year since the agreement was signed, the three productions contemplated in said agreement had been reduced by the plaintiff himself to one, namely, to the production of some play at the Public Auditorium in Cleveland.

In the discussions between the plaintiff and Kommer during the first two months of 1926, the plaintiff informed Kommer that he realized that in view of the huge dimensions of the Public Auditorium in Cleveland, which has a seating capacity of nearly 14,000, a spoken play could not possibly be produced there. It was agreed that the Public Auditorium of Cleveland was suitable only for giving of pantomimes, symphony concerts or operas. Kommer says: " Accordingly, plaintiff suggested the production of a new pantomime there. Somebody in Berlin had mentioned

to the plaintiff the possibility of using the story of the old English Morality play ' Everyman ' as the starting point for a pantomime. This suggestion recurred to the plaintiff and he wanted to order the writing and composing of such a pantomime, provided that Max Reinhardt would agree to the theme. We cabled, therefore, to Max Reinhardt suggesting the idea of ' Everyman ' as the theme for a new pantomime. Within a few days we received Max Reinhardt's full-hearted consent."

The defendant then proceeds to show why this last of the three proposed productions was finally abandoned.

In Exhibit " C " it is stated that Kommer was ready to arrive in Berlin or Vienna early in April to assist in the selection of playright and composer and to conclude agreement. The defendant called attention to the fact that this telegram states that the agreement with reference to the third production was thereafter to be concluded and that nothing further was suggested by plaintiff.

The defendant says that he is in a position to establish that plaintiff failed to bring about any of the above-mentioned three productions; that because of such failure the plaintiff is not entitled to recover the $10,000, which the defendant says has been retained as liquidated damages; that the plaintiff not only failed to perform the terms of the contract, but was without the financial ability to secure the necessary services of the playright and composer; and that the plaintiff, because of his inability to arrange for the writing of " Everyman " as a pantomime, was never able to perform the contract on his part.

The defendant states that no pantomime version of " Everyman " has ever been written and, therefore, a pantomime version could not have been in existence during the years 1925, 1926 and 1927; that he was never provided with a part that he was to act nor a play that he was to direct; and that the plaintiff completely failed to perform the contract in any of the terms agreed upon, with the exception of the payment of $10,000 which was to be forfeited in case the plaintiff was unable to proceed with the contract to completion.

To uphold this judgment on the first cause of action it is necessary to pass upon issues of fact, the decision of which will decide both causes of action with the exception of the amount of damages which the plaintiff would be entitled to under the second cause of action. The court at Special Term has undertaken to decide all the issues in favor of the plaintiff on plaintiff's affidavits, disregarding not only affidavits of the defendant and contract provisions, but also documentary evidence which is contained in the record.

The plaintiff realizes that he must prove that the defendant is in default before there can be a recovery, for he says in his affidavit:

" The amended complaint contains two causes of action. The first is for the recovery of the sum of $10,000, paid by me to the defendant, pursuant to an agreement in writing, dated September 15, 1925, which is Exhibit 1 annexed to the amended complaint, and is made a part hereof as if herein set forth in full, upon the defendant's default under said agreement. The repayment of such sum, upon defendant's default, was expressly stipulated in said agreement."

He then assumes there was a default by the defendant and proceeds to set forth provisions of the contract to establish a default on the part of the defendant and urges that there is no defense to the action. As already pointed out, the difficulty with plaintiff's position is that his affidavit ignores essential portions of the contract and very important affidavits and testimony which clearly establish that there are issues which may be disposed of only on a trial and should not be decided on affidavits.

It is quite evident that the statements in the affidavits are at variance with each other. It may be that at the trial some of the affiants will be unable to stand the test of cross-examination, a frequent result which has emphasized not only the danger of deciding issues of fact on affidavits, but the advisability of sending such issues to trial where the witnesses may be subjected to the test of cross-examination and their testimony scrutinized with care by the trial justice or the jury.

The judgment and order should be reversed, with costs, and the motion denied, with ten dollars costs.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

Judgment and order reversed, with costs, and motion denied, with ten dollars costs.