**COLBY v. KLUNE et al.**

No. 82, Docket 21449.

United States Court of Appeals
Second Circuit.

Argued Dec. 7, 1949.

Decided Dec. 27, 1949.

Morris J. Levy, New York City, for appellant.

Dwight, Harris, Koegel & Caskey, New York City, (H. Blackmer Johnson and Caesar L. Pitassy, New York City, of counsel) for appellees.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. We have in this case one more regrettable instance of an effort to save time by an improper reversion to

"trial by affidavit," improper because there is involved an issue of fact, turning on credibility.[1] Trial on oral testimony, with the opportunity to examine and cross-examine witnesses in open court, has often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system.[2] For only in such a trial can the trier of the facts (trial judge or jury) observe the witnesses' demeanor; and that demeanor—absent, of course, when trial is by affidavit or deposition—is recognized as an important clue to witness' credibility. When, then, as here, the ascertainment (as near as may be) of the facts of a case turns on credibility, a triable issue of fact exists, and the granting of a summary judgment is error. It did not cure the error that each side moved for such a judgment in its favor.[3]

We hear much of crowded trial dockets as the cause of deplorable delays in the administration of justice. The way to eliminate that congestion is by the appointment of a sufficient number of judges, not by doing injustice through depriving litigants of a fair method of trial.[4]

2. That there is here a triable issue of fact appears from the following:

■ (a) Assuming for the moment that

Rule X-3b-2, issued by the S. E. C., is not authorized by the statute, we construe "officer," as used in Section 16(b) of the Securities Exchange Act,[5] thus: It includes, *inter alia,* a corporate employee performing important executive duties of such character that he would be likely, in discharging these duties, to obtain confidential information about the company's affairs that would aid him if he engaged in personal market transactions. It is immaterial how his functions are labelled or how defined in the by-laws, or that he does or does not act under the supervision of some other corporate representative. As we think that, at this stage of the case, it is well to reserve decision concerning the statutory power of the S. E. C. to issue Rule X-3b-2,[6] we think that the plaintiff should be allowed at a trial to produce oral testimony in open court (by examination or cross-examination of witnesses), or other evidence, relevant under the foregoing definition of officer.

■ For the affidavits do not supply all the needed proof. The statements in defendants' affidavits certainly do not suffice, because their acceptance as proof depends on credibility; and—absent an unequivocal waiver of a trial on oral testimony—credibility ought not, when witnesses are avail-

1. Arnstein v. Porter, 2 Cir., 154 F.2d 464; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 790; Dixon v. American Tel. & Tel. Co., 2 Cir., 159 F.2d 863, 864; Boro Hall Corp. v. General Motors Corp., 2 Cir., 164 F.2d 770, 772; Fogelson v. American Woolen Co., 2 Cir., 170 F.2d 660, 662; Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 571, 573; Krug v. Santa Fe Pac. R. Co., 81 U.S.App.D.C. 288, 158 F.2d 317, 320; Sprague v. Vogt, 8 Cir., 150 F.2d 795, 800; cf. Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F.2d 580, 583; Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167, 168.

2. Until comparatively recently, in Continental Europe and in English and American equity courts, oral testimony was not heard by the trial judge who decided the case. In the English and American common-law courts, however, the trial court did see and hear most of the witnesses.
See, e. g., Millar, The Formative Principles of Civil Procedure, in the volume

Engelman, History of Continental Civil Procedure (1927, transl. and ed. by Millar) 47–68; Wigmore, Evidence, section 1417; cf. sections 1395, 1399, 1415. See also, as to depositions, Brewer v. Beckwith, 35 Miss. 467, 472; Napier v. Bossard, 2 Cir., 102 F.2d 467, 468–469 and discussion in Arnstein v. Porter, 2 Cir., 154 F.2d 464, 470–472.

3. Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780, 784; Krug v. Santa Fe R. Co., 81 U.S.App.D.C. 288, 158 F.2d 317, 319; Garrett Biblical Institute v. American University, 82 U.S.App.D.C. 263, 163 F.2d 265, 266.

4. See Doehler Metal Furniture Co. v. U. S., 2 Cir., 149 F.2d 130, 135.
Pre-trial conferences, properly used, can legitimately reduce congestion and delays. But the desire for speed has induced some trial judges—fortunately they seem to be a minority—unfairly to press for settlements.

5. 15 U.S.C.A. § 78p(b).

6. See 15 U.S.C.A. §§ 78c (b) and 78w (a).

able, be determined by mere paper affirmations or denials that inherently lack the important element of witness' demeanor. As we observed in Arnstein v. Porter, 2 Cir., 154 F.2d 464, 471: "It will not do, in such a case, to say that, since the plaintiff, in the matter presented by his affidavits, has offered nothing which discredits the honesty of the defendant, the latter's deposition must be accepted as true." For the credibility of the persons who here made the affidavits is to be tested when they testify at a trial. Particularly where, as here, the facts are peculiarly in the knowledge of defendants or their witnesses, should the plaintiff have the opportunity to impeach them at a trial;[7] and their demeanor may be the most effective impeachment.[8] Indeed, it has been said that a witness' demeanor is a kind of "real evidence";[8a] obviously such "real evidence" cannot be included in affidavits. In Sartor v. Arkansas Natural Gas Corp., Kansas Group, 321 U.S. 620, 628, 64 S.Ct. 724, 729, 88 L.Ed. 967, the Court said that a summary judgment may not be used to "withdraw these witnesses from cross-examination, the best method yet devised for testing trustworthiness of testimony" ; the Court, in that connection, quoted with approval from Aetna Life Insurance Co. v. Ward, 140 U.S. 76, 88, 11 S.Ct. 720, 724, 35 L.Ed. 371: "There are many things sometimes in the conduct of a witness upon the stand, and sometimes in the mode in which his answers are drawn from him through the questioning of counsel, by which a jury are to be guided in determining the weight and credibility of his testimony."

Nor is the situation different because the trial will be before a trial judge without a jury.[9] For how can the judge know, previous to trial, from reading paper testimony, what he will think of the testimony if and when, at a trial, he sees and hears the witnesses?[10] It is because of the crucial element of demeanor-observation that a trial judge's findings are usually

7. See, e.g., Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 790; Levine v. Behn, 282 N.Y. 120, 126, 25 N.E.2d 871; Karpas v. Bandler, 218 App.Div. 418, 420–421, 218 N.Y.S. 500.

8. See Broadcast Music, Inc., v. Havana-Madrid Restaurant Corp., 2 Cir., 175 F.2d 77, 80; "For the demeanor of an orally-testifying witness is 'always assumed to be in evidence.' It is 'wordless language.' The liar's story may seem uncontradicted to one who merely reads it, yet it may be 'contradicted' in the trial court by his manner, his intonations, his grimaces, his gestures, and the like— all matters which 'cold print does not preserve' and which constitute 'lost evidence' so far as an upper court is concerned. For such a court, it has been said, even if it were called a 'rehearing court,' is not a 'reseeing court'; only were we to have 'talking movies' of trials could it be otherwise. A 'stenographic transcript correct in every detail fails to reproduce tones of voice and hesitations of speech that often make a sentence mean the reverse of what the words signify. The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried.' It resembles a pressed flower. The witness' demeanor, not apparent in the record, may alone have 'impeached' him." Cf.

S. S. Hontestroom v. S. S. Sagporack, [1927] A.C. 37, 49; Powell and Wife v. Streatham Manor Nursing Home, [1935] A.C. 243, 247, 249–251, 255, 256–257, 263, 265, 267; Watt or Thomas v. Thomas, [1947] A.C. 484.

8a. See Nokes, Real Evidence, 65 L.Q.Rev. (1949) 57. Wigmore, Evidence, section 1396, speaks of "demeanor-evidence."

9. Thus in Fogelson v. American Woolen Co., 2 Cir., 170 F.2d 660, 663, we reversed a summary judgment, entered in a non-jury action, in order to allow open-court cross-examination. Other Circuit Courts have acted similarly. See Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568; Krug v. Santa Fe Pac. R. Co., 81 U.S.App.D.C. 288, 158 F.2d 317; cf. Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F.2d 581.

Several courts, in reversing summary judgments, have discussed jury and non-jury cases as if, in this respect, they were similar. See, e.g., Parmelee v. Chicago Eye Shield Co., 8 Cir., 157 F.2d 582, 585, 168 A.L.R. 1130; Prime Mfg. Co. v. A. F. Gallun & Sons Corp., 229 Wis. 348, 355, 281 N.W. 697, 700; Parish v. Awschu Properties, 247 Wis. 166, 19 N.W.2d 276, 279; Miner v. Reinhardt, 225 App.Div. 530, 534, 233 N.Y.S. 592.

10. Cf. Fireman's Mut. Ins. Co. v. Aponaug Mfg. Co., 5 Cir., 149 F.2d 359, 363.

binding unless "clearly erroneous"; his findings have not that effect when he has not observed the witnesses.[11]

"All manner of expedients," says Dean Pound, "have been resorted to * * * to arrive at a written settlement of the facts not dependent on the credit to be accorded witnesses or the impression they may make on the particular trial court. * * * But experience has shown that we cannot be sure that in getting a clear-cut statement of facts in this way, to which the law may be applied, we are not cutting out too much, so in the end to be trying an artificial case instead of the real controversy."[12]

It may happen (although we do not know) that, because of their unavailability at the trial, plaintiff will be obliged to obtain the testimony of some or all of the defendants' witnesses by deposition. If so, the demeanor-aspect of their testimony will be lost; however, he will at least have the chance to cross-examine them, an opportunity he has not yet had.[12a] In reversing a summary judgment, the Third Circuit cogently said: "This case illustrates the danger of founding a judgment in favor of one party upon his own version of facts within his sole knowledge as set forth in affidavits prepared ex parte. Cross-examination of the party and a reasonable examination of his records by the other party frequently bring forth further facts which place a very different light upon the picture."[13]

(b) It may be that the S. E. C. had such statutory authority to issue the Rule that it binds the courts.[14] Even so, there remains much room for inquiring into the facts at a trial. For the functions of a "vice-president" or "comptroller" are not so well settled as to be self-evident, and there is need for evidence concerning those functions. Under that Rule as we interpret it, it does not matter whether or how the by-laws of this particular company define the duties of such officers. The question is what this particular employee was called upon to do in this particular company, i.e., the relation between his authorized activities and those of this corporation. Again, under this Rule, it is not decisive whether or not some other person supervised his work.[15]

Counsel for the S. E. C., in a memorandum filed with us, says that it is significant that the employee has or has not "responsibility for the policy of at least a substantial segment of the corporation's affairs" and participates "in executive councils of the corporation as an officer." We think the trial court should receive evidence pertinent to that issue but should reserve decision as to its legal significance until after the trial.

Reversed and remanded.

11. Luckenback S. S. Co. v. U. S., 2 Cir., 157 F.2d 250, 251; Kind v. Clark, 2 Cir., 161 F.2d 36, 46; The Coastwise, 2 Cir., 68 F.2d 720; Stokes v. U. S., 2 Cir., 144 F.2d 82, 85; Norment v. Stilwell, 2 Cir., 135 F.2d 132; Pfeifer Oil Transp. Co. v. The Ira S. Bushey, 2 Cir., 129 F.2d 606, 607; Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774; Equitable Life Assur. Soc. of U. S. v. Irelan, 9 Cir., 123 F.2d 462; Blackner v. McDermott, 10 Cir., 176 F.2d 498, 502. Cf. Powell and Wife v. Streatham Manor Nursing Home, [1935] A.C. 243 at 267.

12. Pound, Appellate Procedure in Civil Cases (1941) 29.

12a. At the time defendant's motion for summary judgment was heard, plaintiff was not obliged to assume that those witnesses would not be available at a trial.

13. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016, 1022.

14. See 15 U.S.C.A. § 78c(b) and Section w(a).

15. Defendants refer to a "release" of the S. E. C. dated November 16, 1940 which set forth "the text of the Commission's formal action," pursuant to the Investment Company Act of 1940, 15 U.S.C.A. § 80a—1 to 80a—52, and the Securities Exchange Act, § 16(a), 15 U.S.C.A. § 78p(a). This "formal action" throws no light on the problems involved in this case.

However, that "release" also sets forth "the opinion of the General Counsel of the Commission" as to the meaning of "officer" under Rule X-3b-2. As this "opinion" of the General Counsel is not part of the "Commission's formal action," it does not bind the Commission, and certainly not the courts. Since we disagree with it, we disregard it.