## MOSBACHER v. BASLER LEBENS VER- SICHERUNGS GESELLSCHAFT.

United States District Court
S. D. New York.

Dec. 5, 1951.

Robert O. Held, New York City, for plaintiff.

White & Case, New York City, Chester Bordeau, New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

The case is the tangled sequel to Nazi abuse of German nationals in the late 1930's. Both sides move for summary judgment on a claim arising out of three insurance policies issued plaintiff by defendant in 1925 when plaintiff was a resident of Nuremberg, Germany.

The simplified facts are these: The policies were each in the sum of twenty thousand "Goldmarks", a fictional currency used for computation purposes, based on a constant fraction of the United States Dollar. The "Goldmark" was defined as equal to $\frac{10}{42}$ of a United States Dollar, and, at the then established rate of 4.20 German Reichsmarks to the dollar, it was equal to 1 Reichsmark. In 1934, America devaluated the dollar, and the worth of the "Goldmark" was devaluated proportionally. Defendant asserted that the value of plaintiff's policies was accordingly reduced and scheduled new premium payments on this basis. Plaintiff excepted vociferously, and extended negotiations between the parties concluded in what is variously described as a "settlement agreement" or a "modification". The agreement, whatever its legal appellation, specified that in the event of plaintiff's emigration from Germany, the policies would become payable partially in U. S. Dollars and partially in German Reichsmarks, though the total amount payable was a compromise figure less than the original value of 60,000 Reichsmarks. Defendant conditioned its payment upon the absence of any German currency regulations which would nullify the arrangement. In 1938, harassed by the Nazis, plaintiff made demand upon defendant for the cash surrender value of the dollar portion of the policies, a sum of $5,700. Defendant refused to pay, claiming that government regulations, compelling conversion into Reichsmarks of all life insurance policies payable in foreign currency, prohibited

552

its performance under the compromise agreement. The conflict was never reconciled, though plaintiff obtained a license which allegedly permitted him to take receipt of the $5,700 on proof he had delivered a "gratuitous" payment of $3,500 into the treasury of the German Reich. Defendant contested the validity of the license, as it does today, asserting that no dollar funds were available under the conversion regulations since whatever dollar reserves had been allocated to plaintiff under the compromise agreement had been converted into Reichsmarks by government fiat. Plaintiff departed Germany without payment and emigrated to the United States. He is now a naturalized citizen. The Nazi government of Germany, in time, ordered the cash-surrender value of the policies forfeited under a law confiscating the property of all Jews "sojourning abroad." Defendant complied, early in 1944, and now asserts that whatever claims plaintiff may have had against it under the policies, collapsed when the funds were sequestered by the state. Plaintiff brings this action for what he considers his just due under the policies.

Both sides, in moving for summary judgment, supply elaborate affidavits by experts in German law. Each cites a vast body of precedent to bolster his position. Their positions are substantially these:

Plaintiff states that the payment by defendant was to be made out of defendant's "free funds". The term is never precisely defined but the general purport of plaintiff's argument appears to be that "free funds" were at all times immune from government currency regulations, that even if the German government could enforce the conversion of funds explicitly set aside by insurance companies to cover policies issued in foreign currencies, "free funds" were an inviolate reserve, which no conversion regulation could affect. Plaintiff's position is rooted in the contention that "free funds" were at all times available to defendant out of which to pay dollars to plaintiff as prescribed by the compromise agreement.

Defendant construes the compromise agreement as a modification of the provisions of the original policies. The funds out of which payment was to be made, defendant asserts, were counterpart funds, strictly regulated by German law, equal to the amount of foreign currency owing under the insurance policies as "modified". When the German government in 1938 ordered converted into Reichsmarks all insurance policies issued to German nationals, payable in foreign currencies, those counterpart funds (the only existing funds for dollar payments) were automatically converted into Reichsmarks, and defendant's ability to perform under the agreement was extinguished.

■ Whatever the merit of these arguments, there is no necessity to pass on them at this time. Summary judgment is not the means to resolve this dispute, where triable issues of fact, possibly turning on credibility, exist. The fact that both sides move for judgment is without significance where such issue exists. Colby v. Klune, 2 Cir., 1950, 178 F.2d 872. The weight of affidavits on both sides is great, the support mustered impressive, but this issue remains: What is the accurate characterization of the funds out of which payment was pledged? Plaintiff says untouched free funds; defendant says counterpart funds wiped out by regulation.

■ Assuming that plaintiff is correct; defendant may be equally correct. Funds labeled "free" may have been exempt from conversion at the same time counterpart funds were converted. Neither side meets the issue squarely. Plaintiff does not distinguish between free funds and counterpart funds, nor does defendant. Each assumes the validity of his own position without effectively discrediting his opponent's. The opposing contentions follow divergent courses. They do not meet at this most crucial point. In complex matters exclusively governed by foreign law, such as the case at bar, expert testimony is critically important to the Court. No issue as important as this should be resolved on partial or inadequate disclosure. Only a full revelation of all the facts will bring about a just determination of the dispute. The identification and characterization of the funds out of which defendant original-

ly agreed to make dollar payments, is a matter properly for the consideration of the trial court.

Summary judgment is a procedural device to expedite justice in our courts. Where the Court may effectively decide the issues involved without recourse to the costly and time-consuming process of trial, summary judgment may be granted. But where, as in the case at bar, substantial issues of fact exist, issues properly settled only after full hearing, summary judgment will not affect substantial justice.

Plaintiff's and defendant's motions for summary judgment will be denied. Settle order.