## LOCKHEED AIRCRAFT CORP. v. CAMPBELL.

No. 14610.

United States District Court
S. D. California, Central Division.

Feb. 24, 1953.

---

Gray, Binkley & Pfaelzer, by William P. Gray, Los Angeles, Cal., for the plaintiff.

Hill, Farrer & Burrill, by William S. Scully, Los Angeles, Cal., for the defendant.

YANKWICH, Chief Judge.

By this action the plaintiff, Lockheed Aircraft Corporation, a corporation, to be referred to as "Lockheed", seeks to recover profits realized by one of its officers in a "short-swing" transaction in its corporate stock, under Section 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78p(b).

The complaint sets forth the transaction with brevity. On June 7, 1951, the defend-

ant, H. R. Campbell, sold 600 shares of the capital stock of Lockheed that were owned by him, and on about June 16, 1951, he sold an additional 100 of such shares. Within six months after June 7, 1951, namely on August 23, 1951, the defendant purchased 1,400 shares of stock of the plaintiff corporation, which was the equivalent of the 700 shares previously sold by him, a stock-split of the shares of the company having intervened between the sale and the purchase transaction.

## I.

### The Agreed Facts.

A pre-trial stipulation of facts gives the following additional details about the parties and the transaction. Lockheed is a California corporation engaged in the manufacture and sale of airplanes, and is the "issuer" of capital stock which is, and at all times here concerned, was, registered on a national securities exchange.

The defendant at all times since May, 1938, has been, and still is, an employee of Lockheed. On March 11, 1942, he was made Assistant Treasurer of the corporation, and on March 5, 1951, he was made Assistant Secretary. He has held both positions continuously up to the present time.

Immediately prior to June 7, 1951, the defendant was the owner of at least 700 shares of capital stock of Lockheed. On about that date, he sold 400 of such shares at $38¼ per share, sold 100 additional shares at $38½ and sold an additional 100 shares at $38¾. On June 16, 1951, he sold still another 100 shares at $38¼. The total consideration that he received for the 700 shares was $26,850.

Between June 16, 1951, and August 23, 1951, the shares of Lockheed were split in such manner that one share prior to the division had the value of two shares thereafter. On about August 23, 1951, the defendant purchased 1,400 shares of stock of the plaintiff corporation at $11 per share for a total consideration of $15,400. The difference between the price at which he sold the 700 shares and the price at which he purchased shares of equal value was $11,450.

At the time that the defendant made the transactions, Lockheed had in effect a stock purchase option plan which permitted certain key employees, of which the defendant was one, to buy stock of the company at the price of $22 per share. The defendant had acquired the option more than six months prior to the purchase.

On December 15, 1951, Lockheed made demand of the defendant that he turn over to them the profit, which he has refused. The answer of the defendant admits the transaction but denies that the functions performed by him, either as Assistant Treasurer or as Assistant Secretary, were of the character performed by an "officer" of the Corporation, as that word is defined by the Act, 15 U.S.C.A. § 78p(b), or under Regulation X-3b-2 promulgated by the Securities and Exchange Commission. 17 Code Fed.Reg., 1949, Sec. 240.3b-2, p. 194.

As already appears, the defendant participated in an option extended to him and others to acquire certain shares of stock below the market value, to compensate him and others for reduced earnings. The stocks have been held by him for a longer period than six months, and the profit sought to be recovered is the difference between the purchase price of the stock and its agreed market value. The good faith of the defendant is not in dispute. Indeed, counsel for the plaintiff forthrightly stated in open court, that the defendant was and continues to be "a valued and trusted employee". And the only object of the action is to determine the validity, as to him, of the stock transaction, the suit being instituted under the authority of the Act. 15 U.S.C.A. § 78aa.

## II.

### What is an "Officer"?

The question to be determined is whether the defendant, at the times mentioned in the Complaint, and in the agreed statement of facts, was an "officer" of the corporation, and, therefore, subject to the interdiction of the section of the Act which prohibits an officer from profiting by a "short-swing" transaction in the corporation stock. 15 U.S.C.A. § 78p(b).

The Act does not define what an officer is. It gives the Securities and Exchange Commission power, by rules and regulations, to define technical, trade and accounting terms. 15 U.S.C.A. § 78c (b). The Commission, by its regulations, has defined "officer" to mean president, vice president, treasurer, secretary, comptroller, and "any other persons who perform for an issuer, whether incorporated or unincorporated, functions corresponding to those performed by the foregoing officers". (Sec. X–3b–2; 17 Code Fed.Regs., 1949, 240.3b–1, p. 194). In adopting this definition, and contrasting the duties of designated officers with those performing similar functions, the Commission followed, as a precedent, the definition of "director" contained in the Act itself. 15 U.S.C.A. § 78c(a) (7). The Commission in its interpretation of the regulation, has expressed the view that an assistant treasurer, an assistant secretary and an assistant comptroller are not officers unless their chief is so inactive as to thrust the burden of the office upon them. (Exchange Act Release, No. 2687, November 16, 1940). Doubts have been expressed as to whether the Commission's definition has validity. Colby v. Klune, 2 Cir., 1949, 178 F.2d 872, 873. And a subjective test has been suggested which would include as an officer, *inter alia,*

> "a corporate employee performing important executive duties of such character that he would be likely, in discharging these duties, to obtain confidential information about the company's affairs that would aid him if he engaged in personal market transactions."

The court which adopted this criterion added:

> "It is immaterial how his functions are labelled or how defined in the by-laws, or that he does or does not act under the supervision of some other corporate representative." Colby v. Klune, supra, 178 F.2d at page 873.

On the other hand, the Commission's definition has been defended upon the ground that unless these assistants are excluded, we would have two identical officers in each prohibited category. See opinion of Judge Wm. Byrne of this court in Lockheed Aircraft Corp. v. Rathman, D.C. Cal.1952, 106 F.Supp. 810, 812–813. I think the question which confronts us here can be solved without adopting either view in its entirety. For, as stated at the trial, it is conceivable that in a corporation like Lockheed, with complex activities, two persons might perform the functions of treasurer, secretary and comptroller, each doing, *within a certain sphere of the corporation's far-flung activities,* exactly the same things.

In the last analysis, the object of the prohibition in the Act was to prevent persons on the inside from profiting unduly by the knowledge that they may have acquired as to the financial situation of the corporation. Colby v. Klune, supra. In seeking to prevent such dealings by making the directors and officers accountable to the corporation for the profits, the Congress sought to prevent the practice, and disregarded entirely the fact whether in a particular instance, there may or may not have been an actual or unfair use of such information. Smolowe v. Delendo Corp., 2 Cir., 1943, 136 F.2d 231, 235–236, 148 A.L.R. 300; Park & Tilford v. Schulte, 2 Cir., 1947, 160 F.2d 984, 987; Shaw v. Dreyfus, 2 Cir., 1949, 172 F.2d 140, 142; Gratz v. Claughton, 2 Cir., 1951, 187 F.2d 46, 49–50. And see, Donald C. Cook and Myer Feldman, 1952, Insider Trading Under the Securities Exchange Act, 66 Harv. L.Rev. 385.

So if a transaction comes within the inhibition of the statute, it matters not, as happened in this case, that the stock came into the hands of the defendant as a part of a policy of the corporation to compensate some of its highranking executives for a rather drastic cut in salaries which went into effect at about that time.

### III.
#### Was the Defendant an "Officer"?

So the question before us is purely one of fact. We put aside any dogmatism inherent in any attempt to define, *for all purposes,* terms in a statute or regulation. And the problem for solution is: Was the defendant, at the time, an officer?

The by-laws of the corporation designated the assistant treasurer and assistant secretary as "officers". The evidence in the record shows that the call for the designation arose from the necessity for the presence, at various times, of an officer who could, on behalf of the corporation, execute certain written instruments. Thus, while the defendant was in Georgia supervising some of the activities of the corporation the necessity arose, on several occasions, to have locally a person who could execute, *as secretary*, documents on behalf of the company. However, a study of the record leads to the conclusion that whether we apply the objective test laid down in the regulation or the subjective test laid down by the Court of Appeals for the Second Circuit in Colby v. Klune, supra, the defendant *was not* an "officer" of the company and did not perform the functions which the treasurer and secretary of Lockheed.performed.

We have the testimony of the defendant and his superior, C. A. Barker, Jr., before us, both in the form of depositions and in supplemental oral testimony given at the trial. The pattern which emerges from a study of this testimony is that the defendant's superior, C. A. Barker, Jr., was in charge of the financial affairs of the corporation. It was his duty to see that the company was in cash position all the time, to make forecasts as to future financial needs, provide bank credit if necessary, and watch over the credit department in connection with the company's vendors. Indeed, as he put it, he "had charge of all of the financial affairs of the company." In making the forecasts, one of his most important functions, for which his prior occupation as a banker fitted him well, was the advance budgeting.

On the other hand, the defendant was a department manager. While he had the title of "Manager of the Finance Department", this merely meant that he supervised the mechanics of the persons working in that department, keeping the accounts, and preparing the balance sheets under Barker's supervision. He was an administrator. And the extent of his administrative activities, may be gathered from the fact that as Director of Financial Operations, he has now 1718 persons under his jurisdiction. While occupying a similar position for the Georgia operation, he had supervised 836 persons. The financial operations of the company, the borrowing of money, and the preparation of budgets were beyond his jurisdiction. When he was in Georgia, he did interview the Federal Housing Administration and discussed with them the possibility of facilitating housing for their employees. But he did not make, nor have authority to secure, commitments.

A study of the record and of the various organizational charts introduced at the trial justifies the conclusion that the defendant was what Barker and others called him, "a first-rate administrator", a man capable of dealing with personnel and organize it into a cohesive team, which handled the involved and detailed accounting of the company. While the title of his department might imply concern with policy relating to company finances, in reality, he had none. One of the chief functions of the treasurer, as already stated, was to make financial forecasts, to determine what Lockheed's cash position would be in the future, what need there might be for money and to forecast the profit and loss that might be anticipated. In order to do this, it was necessary to make certain assumptions,—the production schedule of each model, the estimated hourly pay rate of future times, the amount of money the company anticipated putting into fixed assets or into research or development, the interest to be paid, the cost of materials. The basic responsibility for the making of these assumptions was and is in C. A. Barker, Jr. and were never delegated or performed by the defendant. Any discussions of such matters with the defendant would be incidental only. For the function of his department was to perform the mechanics which the financial policy and forecasts would require. Even while he was in Georgia, the only discussions relating to financial policy had with him related to the type of contracts Barker would like to obtain from the Air Force, and a discussion of the banks in which to bank the money resulting from the operations. Barker has

been at his work for many years, excluding brief vacations. Whenever he was away, his functions were performed *not by the defendant, but by another*. Even technical accounting policies were determined by another person who is an accountant. I think Barker summed up the functions performed by Campbell in a complimentary sentence when he said "He is an excellent administrator of people".

The record warrants no other inference. And whether we adopt the subjective test suggested in Colby v. Klune, supra, namely, an inside position in which possibility of securing valuable advance information of possible fluctuations in stock, or the objective test of the regulation, i. e., performance of acts similar to those performed by the enumerated officers, the conclusion must be that the defendant did not perform duties conformable to those of the treasurer or secretary except in the minor function of executing, on rare occasions, instruments required to be executed by those officers for and on behalf of the company. And, while he may have had the title of "Manager of the Financial Department", in reality, he *did not concern himself with financial policy at all*. He was merely an able administrative officer handling a large group of men who were performing the mechanics incidental to the accounting and bookkeeping of a large concern.

Determination of financial policy, either in a direct or consultative way, was outside his province. Under the circumstances, he cannot be said to be an "officer" within the meaning of the interdiction of the statute. 15 U.S.C.A. § 78p(b).

The plaintiff's challenge of the validity of the Commission's definition of "officer" in the regulation, and its administrative interpretation subsequently is ill founded. The regulation is valid and both it and its administrative interpretation by the Securities and Exchange Commission come clearly within the ambit of the area which our own Court of Appeals, and the Supreme Court have laid down for administrative regulations and interpretations. Mechanical Farm Equipment Distributors, Inc. v. Porter, 9 Cir., 1946, 156 F.2d 296; and see, Securities and Exchange Commission v. Associated Gas & Electric Co., 1938, 2 Cir., 99 F.2d 795, 798; United States v. American Trucking Ass'n, 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; American Power Company v. Securities and Exchange Commission, 1946, 329 U.S. 90, 105, 106, 67 S.Ct. 133, 91 L.Ed. 103.

Judgment will, therefore, be for the defendant.