**Norman T. WHITAKER, Plaintiff,**

v.

**Frank R. GRAVES, President United States Chess Federation; United States of America Chess Federation (A Corporation of Illinois), and Kenneth Harkness (also known as Stanley Edgar), Defendants.**

United States District Court
S. D. New York.
Sept. 12, 1955.

Norman T. Whitaker, plaintiff pro se.

Saul Rubin, New York City, for defendants.

HERLANDS, District Judge.

Two motions for summary judgment are made by plaintiff under Fed.Rules Civ.Proc., Rule 56(a), 28 U.S.C.A.

In this litigation, acting as his own attorney, plaintiff has drawn the original and the amended complaint, conducted

numerous interlocutory proceedings, and argued the two motions now before this Court for decision. Plaintiff is a master chess player.

The three defendants affected by the pending motions are: Frank R. Graves, president of the United States of America Chess Federation; the Federation itself; and Kenneth Harkness. Originally, plaintiff named additional defendants. To meet the vicissitudes of this bitter litigation, plaintiff discontinued as to them in stages; and the three defendants at bar are all that presently remain in the case.

The amended complaint consists of nine "counts" or causes of action. The pending motions, however, are directed only to the first four counts. One motion involves the first count; the other, the second, third and fourth counts. Thus, even if plaintiff's motions were granted, the last five counts would still remain in litigation.

The *first* count, charging libel, is predicated upon certain printed matter appearing in the May 20, 1955 issue of "Chess Life." The demand is for $100,000 compensatory damages and $100,000 punitive damages.

The *second* count, charging plaintiff's "illegal expulsion" from defendant-Federation on March 15, 1955, through improper acts committed by defendant Graves, demands $100,000 compensatory damages and an order setting aside the allegedly unlawful expulsion.

The *third* count, charging "illegal expulsion," seeks (a) an injunction to restrain defendants from boycotting plaintiff in United States rated chess tournaments; (b) $100,000 compensatory damages; and (c) $100,000 punitive damages.

The *fourth* count, charging "illegal expulsion," is based upon certain allegedly improper proceedings in the course of a so-called "expulsion trial" in which plaintiff was tried "in absentia." The demand is for $100,000 compensatory damages and an order vacating the expulsion.

While the remaining five counts of the amended complaint are not involved in these motions, a reference to them will complete the general picture of the litigation. Thus, the *fifth* count, charging libel, is predicated upon some item identified by the date of February 17, 1955, although no printed or written matter is set forth. The demand is for $100,000 compensatory damages. The *sixth* count, founded on a writing dated August 28, 1954, charges libel and demands $100,000 compensatory damages. The *seventh* count, involving an item in the April 5, 1955 issue of Chess Life, charges libel and demands $100,000 compensatory damages. The *eighth* count, denominated "fraudulent conversion," alleges that seventy-two papers turned over to defendant Graves in 1952 were converted by him; the demand is for $100,000 compensatory damages and $100,000 punitive damages. The *ninth* count, captioned "nonfeasance," accuses defendant-Federation with having maliciously refused to include in its "Yearbook" a listing of plaintiff's 1927 tournament victory; for such "nonfeasance" plaintiff demands $100,000 in compensatory damages and $100,000 punitive damages.

A close analysis of the pleadings and the motion papers establishes that there are genuine issues as to virtually all of the material facts. All of plaintiff's charges are actually and in good faith controverted. The basic facts are in a state of substantial controversy.

Such issues, for example, include: (1) defendant Graves' relationship to or connection with defendant-Federation's publication of the allegedly libelous matter; (2) the truth of the alleged libel, especially in view of the certified photostatic copy of two certain records of the former Supreme Court for the District of Columbia in Criminal Case No. 53134, United States v. Gaston B. Means and Norman Whitaker; (3) defendant

Graves' responsibility in expelling plaintiff; and (4) the legality of or justification for such expulsion.

In ruling on a motion for summary judgment, the Court's function is not to resolve existing factual disputes but to determine whether there are genuine issues as to any material fact. Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464; Securities and Exchange Commission v. Payne, D.C.S.D.N.Y.1940, 35 F. Supp. 873. See Safeway Stores v. Wilcox, 10 Cir., 1955, 220 F.2d 661, 664.

The Court of Appeals for the Second Circuit, Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130, 135, has clearly enunciated the controlling principle in the following language:

> "We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable."

In the present case, there are serious issues of credibility that can be resolved satisfactorily only upon a plenary trial, where the witness can be seen and heard and where the triers of fact will have the benefit of probing cross-examination. Colby v. Klune, 2 Cir., 1949, 178 F.2d 872; Sarnoff v. Ciaglia, 3 Cir., 1947, 165 F.2d 167.

Plaintiff, as the party moving for summary judgment, has failed to sustain "the burden of establishing that the material facts are not in dispute," for "it is not incumbent on the adverse party to show that summary judgment should not be entered, though the rule does provide that he 'may serve opposing affidavits.'" Driggers v. Business Men's Assurance Co. of America, 5 Cir., 1955, 219 F.2d 292, 299.

Motions denied.