ZOLTAN E. ROTH, Plaintiff and Appellant, *v.* ANGEL LUGO ET AL., Defendants and Appellees.

No. 349. Decided February 15, 1963.

366

*Hernán R. Franco* for appellant. *Oscar Castro Rivera* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On June 10, 1959, Ángel Lugo and his wife Elvira Pagán, owners of a certain property of 163.2038 cuerdas situated in Bo. Pájaros of Bayamón, granted Carmen Betancourt an option to purchase that property in consideration of the sum of $4,000 paid to them by the latter. The selling price would be at the rate of $2,000 per cuerda and an initial payment of 25 per cent would be tendered upon execution of the deed. The owners agreed to pay to Carmen Betancourt and to plaintiff Zoltan E. Roth, if the option were exercised and upon tendering the initial payment, a commission of 5 per cent of the purchase price for their services as brokers in the transaction. The $4,000 would be credited to the initial payment if the option were exercised, otherwise it would belong to the owners. The purchase option would expire on December 10, 1959. Although the accepter was bound to inform the owners in writing of her decision to exercise the option on or prior to that date, she would still have 60 additional days to close the deal. It was provided that the accepter's rights under the option could be ceded to such persons whom "they" might designate. On the same day of June 10, 1959, Carmen Betancourt assigned the purchase option to Roth or his assignees, who acquired the right of option from that moment.

In this action on specific performance brought by Roth against the owners of the property it was alleged in the

complaint that he advised them within the period fixed in the option of his decision to exercise the same, being ready and willing to comply with all the conditions agreed upon in the option by executing the corresponding deed of sale, and that defendant owners refused to do so. He demanded specific performance of the contract and damages in the sum of $255,000 in the event it was not so ordered.

Defendants filed a motion for summary judgment praying for dismissal of the complaint on the ground that the option on which plaintiff's right to demand was based had been assigned and sold to the firm Gus P. Nichols Co. on October 22, 1959, and because on November 14, 1959, the firm Gus P. Nichols had exercised the option by letter sent to defendants and to plaintiff.

The option contract of October 22, 1959, executed between Roth and Gus P. Nichols, which was attached to the motion for summary judgment, states that Gus P. Nichols Co. wished to purchase Roth's right of option, and they stipulated that in consideration of the sum of $2,500 paid in cash Roth "transferred, negotiated, and sold" to Nichols the exclusive right and option to acquire Roth's option to the said property, subject to the terms and conditions of the original option. This option to purchase the option was assigned on the following conditions: (1) that its term would extend to November 16, 1959; (2) that upon execution of the option of purchase and transfer of the property by Lugo and his wife to the accepter herein, Nichols, or its assignees, offerer Roth would receive the sum of $27,500 as the balance of the purchase price of this option, together with the $2,500 originally paid; (3) that the total purchase price of $30,000 would include any right, title, or interest of offerer Roth in any deposit paid to the owner of the real property in accordance with the original option. In the event the accepter should fail to exercise this option within the term provided in the

document, the offerer would be entitled to retain the $2,500 as liquidated damages.

On November 14, 1959, Gus P. Nichols Co. wrote a letter to the owners, which was attached to the motion for summary judgment, informing them of the agreement made with Roth on December 22, 1959; that on this date, November 14, 1959, it had exercised the option to purchase Roth's option, and that this letter would serve as notice of its intention to acquire the property in accordance with the original option of June 10, 1959. There is a letter dated December 9, 1959, which Roth wrote to defendants' attorney, Oscar Castro Rivera, informing him that upon closing the option contract with Nichols with respect to Lugo's 163 cuerdas the balance of $27,500 payable at execution would be delivered to two persons whom he mentioned, $15,000 to one of them and $12,500 to the other. He stated that he had acquired the option on Lugo's property in his name, but that he represented 50 per cent of the interest of each one of these persons. This letter was also attached to the motion, as well as an affidavit of defendant Lugo setting forth that, upon expiration of the 60-day period stipulated in the original option of June 10, 1959, the holders of the option, Gus P. Nichols Co., were unable to raise the amount necessary for the down payment and requested an extension which the declarant refused to grant, and the option period expired.

In the opposition to the motion for summary judgment plaintiff Roth included his affidavit and stated that he had never assigned to Nichols the contract of option to purchase defendants' property; that by the agreement of October 22, 1959, the deponent granted to Nichols an option to purchase, on or before November 16, 1959, and upon payment by Nichols of $27,500, his option to purchase defendants' property; that Nichols failed to comply with the terms for the purchase of his option, the said agreement of option being null and void, and the company never paid the $27,500. That

no contractual relation ever existed between defendants and Nichols regarding the right of purchase given by them to the deponent, and that defendants have at all times dealt with deponent and have recognized him as the owner of the option of purchase of their property. Roth further declared that on February 6, 1960, defendants demanded compliance with the terms and conditions of the option which they had granted to him; that he made all the necessary arrangements to that end, including an appointment with a notary and defendants for the formal execution of the option, but that defendants never appeared at the hour and date specified. He attached to this statement a copy of said letter of February 6, 1960, addressed to plaintiff Roth by the defendants. That letter reads: please take notice that the period agreed upon for the final execution of the option agreement which they had granted to him and to Mrs. Betancourt would expire on February 8, 1960, and that they insisted on the specific performance of the contract.

The trial court rendered summary judgment dismissing the complaint. After setting forth the actions of the parties above described, it stated: "Notwithstanding the foregoing, the term of the option for the purchase of the property of defendant spouses expired on February 8, 1960, that is, at the expiration of the 60 days of grace granted under the stipulation (a) which has been copied in subparagraph 1 *ante* [original option], without Gus P. Nichols Company nor plaintiff nor any other alleged assignee of the latter's rights complying with the terms of the contract, nor specifically paying or offering to pay the first instalment of the selling price, or even demanding the execution of the deed of sale." It stated that it had under consideration "all the facts which could be produced at a formal trial, there being no genuine issue as to them between the parties, except as to the interpretation thereof and the legal inference to be drawn from such facts,"

and that the controversy should be decided without further prosecution.

The trial court then concluded: (1) that Roth had no cause of action to demand specific performance of the option, since in *assigning* the same to Nichols in the document of October 22 he relinquished all his rights thereto; (2) that if plaintiff Roth had reserved any right under the option notwithstanding having assigned the same, the option was extinguished without further legal effect upon his failure to comply with the terms and conditions thereof; and (3) that defendants' option having been thus extinguished and said defendants having been willing to comply with the terms thereof until its expiration on February 8, 1960, they should not be liable for damages for alleged nonperformance. The complaint was dismissed.

Rule 36.3 of the Rules of Civil Procedure of 1958, dealing with summary judgments, provides that "the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A rule which perhaps to a greater extent than any other rule was aimed to speed the termination of litigations by eliminating a trial on the merits in which there is no genuine controversy of fact and only calls for the application of the law, by a paradox has also been, to a greater extent than is desirable, a device which in the long run has caused delay, as may be seen from the great number of cases compiled, according to Barron and Holtzoff, because of the unjustified application and considerable misunderstanding in regard to this procedure, the flood of cases applying the rule being so great that the Rule itself has seemed lost amid the case law.[1] If the Rule is applied with wise discernment, says Moore, it

---

[1] 3 BARRON AND HOLTZOFF, Federal Practice 96 *et seq.*, Rules Edition.

will materially aid the objective by eliminating useless trials. If it is not so applied, it will delay a final determination that is just. In a great many cases, he points out, it is no easy road for the resolution of the problem as to whether there exists a genuine issue of a material fact. Any reasonable doubt as to whether or not it exists should be resolved against a judgment summarily entered. The courts should avoid an improvident grant of summary judgment which either results in injustice or in reversal with the attendant delay of the case. And if the trial court should err, he goes on to say, such error should be against the summary judgment and in favor of a live trial. The problems of crowded dockets will not be resolved by disposing summarily of issues of fact fairly presented in an action.[2]

---

[6] 6 MOORE, Federal Practice 2012 *et seq.* and 2121 (2d ed.). Moore expresses the prevailing feeling, in the usefulness of which we believe, concerning the proper evaluation of this device to cut short the determination of cases in the light of the fundamental right to a trial on the merits in which the weapon of cross-examination plays such a fundamental role in clarifying the truth. From Judge Frank, in *Doehler Metal Furniture Co.* v. *United States*, 149 F.2d 130, 135 (C.A. 2): "We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts... Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay. [Citations.] The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered."

Judge Frank himself, in *Colby* v. *Klune*, 178 F.2d 872 (C.A. 2), again states: "We have in this case one more regrettable instance of an effort to save time by an improper reversion to 'trial by affidavit,' improper because there is involved an issue of fact, turning on credibility. Trial on oral testimony, with the opportunity to examine and cross-examine witnesses in open court, has often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system. For only in such a trial can the trier of the facts (trial judge or jury) observe the witnesses' demeanor; and that demeanor—absent, of course, when trial is by affidavit or deposition—is recognized as an important clue to witness' credibility. When, then, as here, the ascertainment (as near as may be) of the facts of a case turns on credibility, a triable issue of fact exists, and the granting of a summary judgment is error... We hear much of

372

The procedure which permits the rendering of summary judgment is, as it has been more or less characterized, to pierce the allegations of fact of the parties, whether claim or defense, for a pretrial sifting with extraneous elements of proof, or without those elements if unnecessary, to expose whatever is sham, pretended, and unreal in the pleadings, and to arrive at the truth as to whether or not there is a real and genuine issue of facts, or on any material fact, calling for a trial for resolution thereof by the hearing of evidence before the court. This sifting function having been accomplished, the purpose of this procedure terminates as respects both effects. If it is determined that there is in the action a genuine issue on the pertinent facts, it is not the lawful function of the court to try to resolve it at such a time, even

crowded trial dockets as the cause of deplorable delays in the administration of justice. The way to eliminate that congestion is by the appointment of a sufficient number of judges, not by doing injustice through depriving litigants of a fair method of trial."

Judge Learned Hand in *Bozant* v. *Bank of New York*, 156 F.2d 787, 790 (C.A.2): "In conclusion we cannot avoid observing that the case is another mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment. This is especially true when the plaintiff must rely for his case on what he can draw out of the defendant. [Citation.] It appears to be somewhat difficult to persuade the district courts of this; but we are satisfied that it is true." And dissenting in *California Apparel Creators* v. *Wieder of California*, 162 F.2d 893, 903: "Indeed, when I see, as I am constantly seeing more and more, the increasing disposition to make use of that remedy, I cannot help wondering whether there is not danger that it may not rather impede, than advance, the administration of justice. It is an easy way for a court with crowded dockets to dispose of them, and the habit of recourse to it readily becomes a denial of that thorough, though dilatory, examination of the facts, on which justice depends even more than upon a studious examination of the law; for a mistake of law can always be reviewed. Speed and hurry ought to be antipodes of judicial behavior."

In *Whitaker* v. *Coleman*, 115 F.2d 305, 307 (C.A. 5), Judge Hutcheson spoke as follows: "Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully tests this out, in advance of trial by inquiring and determining whether such evidence exists." Several years later in *Gray Tool Co.* v.

though it be inclined to believe that at a trial on the merits the facts alleged against the party against whom summary judgment is sought would have little or less opportunity of prevailing over those of the party seeking judgment. The nonobservance of this norm has resulted in not few reversals of judgments summarily entered, and leads to what in connection with the Rule has been called "trial by affidavit," a form so extraneous to the Anglo-Saxon procedural concept prevailing in this jurisdiction that it is based on adversative oral trial. On the other hand, where a real and genuine issue of fact does not appear from the correct evaluation of the facts presented, the procedure has also accomplished its purpose, since the contrary is to decide according to law as in any other case in which the facts have been resolved and adjudicated by the court itself.[3]

---

*Humble Oil & Refining Co.*, 186 F.2d 365, referring to a summary judgment unduly entered, he pointed out that to cut a trial short is not an end in itself but a means to an end, and that in the conduct of trials, as in other endeavors, it is quite often true that the longest way around is the shortest way through.

"An expeditious disposition of cases," said Judge Murrah in *Avrick v. Rockmont Envelope Co.*, 155 F.2d 568, 573 (C.A. 10), "is a cardinal virtue of the administration of justice, but it is not more important than one's fundamental right to his full day in court."

[3] If the summary judgment procedure has withstood attacks of unconstitutionality on the ground that it deprives of the right to trial by jury guaranteed in civil cases by the Federal Constitution and by many States, it has been precisely because the Rule on its face, duly applied without exceeding its legitimate purpose and sphere of action, is not considered to deprive of such right since, if there is no genuine issue on the facts, a jury as triers of fact would have nothing to settle. *Cf. Lindsey v. Leavy,* 149 F.2d 899, 902 (C.A. 9), *cert. denied,* 326 U.S. 783; *Ex parte Peterson,* 253 U.S. 300; *Fidelity & Deposit Co. v. United States,* 187 U.S. 315, 319; *General Inv. Co. v. Interborough Co.,* 235 N.Y. 133, 142; *Port of Palm Beach Dist. v. Goethals,* 104 F.2d 706, 709 (C.A. 5); *Page v. Work,* 290 F.2d 323, 334 (C.A. 9). As already stated by Judge Cardozo in 1926, at a time when this procedure was not as popular as it is now: "The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." *Richard v. Credit Suisse,* 242 N.Y. 346, 350.

The language of Rule 36.3, like its federal counterpart 56(c), is very simple: "The judgment sought shall be rendered forthwith if the pleadings, depositions... show that there is no *genuine issue as to any material fact.*" This Court has so stated and repeated in very familiar cases, as has also been said and reaffirmed by other appellate courts. But, as is usually the case, to state a principle of law is always easier than to apply it, particularly in the first instance in which the circumstances and other facts on a controverted question are not always clearly presented with a defined contour. Such a clearly expressed provision has become the most sensitive point, the Achilles' tendon of this procedure, around which there has been great divergence of criteria between trial courts and reviewing courts in the function of applying the same to a particular set of facts and circumstances. Before rendering judgment summarily, the trier should make a conscientious examination of the state of facts and be fully convinced, so far as an absolute trial is possible, that he has before him the whole truth on the facts, since an injustice could be committed; and the reversal of a summary judgment which should not have been rendered, after the delay and time elapsed, merely decides that a case should go to trial.

Even though for the more limited purpose to determine whether or not there is a genuine issue of fact and not to adjudicate the rights of the parties in the litigation, it is necessary to form a judgment by evaluating and weighing the facts and circumstances presented in the incident of summary judgment. On the great bulk of issues, says Moore, no rigid or magical formula can be offered to determine the existence of a genuine issue of material fact. On last analysis, a problem of judging is involved.[4] There are, however, in the doctrine some well-established norms which govern the procedure of weighing and evaluating those

---

[4] MOORE, *op. cit.* at 2103.

facts and circumstances, aimed in particular at the permissible function of this Rule. The application of those norms aids in the correct disposition of a motion for summary judgment and prevents that the purpose thereof be defeated.

■ A litigant has a right to a trial where there is the slightest doubt as to the facts, said the First Circuit following a line of authorities in *Peckham* v. *Ronrico Corporation*, 171 F.2d 653, 657, a case of our Federal Court in which a summary judgment was reversed, and any doubt as to the existence of a genuine issue must be resolved against the party moving for summary judgment. *Cf. Doehler Metal Furniture Co.* v. *United States*, 149 F.2d 130, 135; *Arnstein* v. *Porter*, 154 F.2d 464, 468; *Sarnoff* v. *Ciaglia*, 165 F.2d 167, 168; *Armco Steel Corp.* v. *Realty Investment Co.*, 273 F.2d 483; *Depositors Trust Company* v. *Maryland Casualty Co.*, 174 A.2d 288; *Purofied Down Products Corp.* v. *Travelers Fire Ins. Co.*, 171 F.Supp. 399; *National Screen Service Corp.* v. *Poster Exchange, Inc.*, 305 F.2d 647; *Traylor* v. *Black, Sivalls & Bryson, Inc.*, 189 F.2d 213; *Toebelman* v. *Missouri-Kansas Pipe Line Co.*, 130 F.2d 1016, 1018; *Weisser* v. *Mursan Shoe Corp.*, 127 F.2d 344, 346; *Cameron* v. *Vancouver Plywood Corp.*, 266 F.2d 535, 540.

■ The preceding norm also follows the well-established principle that the burden rests upon the party seeking summary judgment to establish, beyond any doubt, the nonexistence of a genuine issue of every material fact which in the light of the applicable substantive law would entitle him to judgment as a matter of law. It has been said that the burden upon the moving party is even greater than the burden of proof which ordinarily rests on a claimant to establish his case. Summary judgment should be entered only when the court has the whole truth on the facts. It is not sufficient that in its opinion the facts presented enable it to render judgment in law, or that it believes that those of the adverse party against whom summary judgment is rendered

would have little opportunity to prevail at a trial. *Cf. Sartor* v. *Arkansas Natural Gas Corp.,* 321 U.S. 620, 627; *Traylor* v. *Black, Sivalls & Bryson, supra,* at p. 216: "A summary judgment is an extreme remedy, and, under the rule, should be awarded only when the truth is quite clear"; *American Insurance Co.* v. *Gentile Brothers Co.,* 109 F.2d 732, 735; *Spragne* v. *Voght,* 150 F.2d 795, 801; *Walling* v. *Fairmont Creamery Co.,* 139 F.2d 318, 322; *Kasper* v. *Baron,* 191 F.2d 737, 738; *Dulansky* v. *Iowa-Illinois Gas & Electric Co.,* 191 F.2d 881, 885; *Caylor* v. *Virden,* 217 F.2d 739, 741.

■■ Viewing the facts and circumstances for the purpose of determining whether or not there is a genuine issue on a material fact, the court may make use of the presumptions of law, of the judicial notice, of the res judicata, and of any other admissible element of proof, but it should not consider the aspect of credibility of such proof unless the extreme state of an intrinsically untrue or unreal fact is present. The facts presented by the party against whom the judgment is sought should be taken as true, and any inference to be drawn from the evidence must be favorable to such party. *Cf. Ramsouer* v. *Midland Valley R. Co.,* 135 F.2d 101, 106; *Dulansky* v. *Iowa-Illinois Gas & Electric Co., supra,* at p. 884; *Caylor* v. *Virden, supra,* at p. 741; *Northwestern Auto Parts Co.* v. *Chicago, B. & Q. R. Co.,* 240 F.2d 743, 746, *cert. denied,* 355 U.S. 815; *Moore* v. *New Amsterdam Casualty Insurance Company,* 199 F. Supp. 941, 946; *Allison* v. *Mennonite Publications Board,* 123 F. Supp. 23, 25; *Girard* v. *Gill,* 261 F.2d 695, 697.

These and other equally well-established principles which are not pertinent here apply strictly against the party moving for summary judgment. The fundamental reason is that such judgment, if unduly entered summarily, is unfair because it deprives the party of the fundamental right to an oral adversative trial with the effective weapon of cross-examination which, as stated by Mr. Justice Jackson in

*Sartor*, *supra*, is the best method yet devised for testing trustworthiness of testimony. Also, if we consider that it deprives the party of the factor of credibility inherent in the witness' demeanor in court. As stated in *Colby* v. *Klune*, *supra*, the witness' demeanor before the trier of the facts is material evidence which can not be included in the affidavit.

██ Viewing the judgment summarily entered in this case in the light of the correct norms, it seems that on the basis of the state of facts before the trial court it should not have been rendered. The court relied on the fact that plaintiff Roth had no cause of action because he had relinquished his right of option. Apparently the court did not have the whole truth on the facts. *Cf. Poller* v. *Columbia Broadcasting*, 368 U.S. 464, 467. Plaintiff stated under oath, referring to the contract of October 22 involving the sale of the option, that Nichols never acquired the same for failure to perform. Irrespective of whether or not this may be definitively found to be correct, in which case Nichols' testimony or intervention was possibly necessary for the purposes of the Rule, the fact should have been taken as true, particularly since Roth did not sign nor intervene in the letter of November 14, 1959, which Nichols wrote to the owners of the property. On the other hand, there is Roth's letter to Castro Rivera of December 9 which implies that Nichols could close the deal, but there is also the subsequent letter which the owners wrote to Roth on February 6, 1960, reminding him that the period for the final closing of the option agreement which they (the owners) had granted to him and to Mrs. Betancourt (it refers to the original option) would expire two days later, February 8, and demanding Roth's strict performance. The inferences drawn from this letter, which at this stage should be adverse to defendants and favorable to Roth as party against whom summary judgment was sought, *cf. United States* v. *Diebold, Inc.*, 369 U.S. 654, 655, imply that at the time of closing the deal definitively the

owners did not recognize any right to Nichols and acted on the basis of the original option given to Roth. Roth also stated under oath that he made arrangements with the notary and defendants for the formal execution of the option, and that the latter failed to appear on the date agreed upon.

The least that can be said of this set of facts is that it leaves serious doubt concerning the nonexistence of a genuine issue as to whether or not Roth had relinquished his option with the attendant right to exercise the same. Possibly there was behind the documents some conduct of either party which would clarify the truth, to be exposed by oral testimony, with all the elements of credibility and other inferences permissible to the trial judge.

The summary judgment rendered in this case will be reversed and the record remanded to the trial court for a new trial or to continue with the proceedings consistent with this opinion.