**SELAS CORPORATION OF AMERICA**

v.

**Jacob VOOGD.**

**Civ. A. No. 72–621.**

United States District Court, E. D. Pennsylvania.

Sept. 5, 1973.

11. See note 10, *supra.*

William C. Bullitt, Lawrence J. Fox, Philadelphia, Pa., for plaintiff.

Edwin P. Rome, Philadelphia, Pa., for defendant.

## OPINION

GORBEY, District Judge.

Before the court is plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This action arises under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b).

The plaintiff is the corporation seeking to recover short term profit from a corporate officer who allegedly traded the corporate stock, contrary to the Securities Exchange Act and the Rules of the Securities and Exchange Commission.[1]

Defendant, for the periods relevant to the transactions in question, was the Executive Vice-President for International Operations, of plaintiff corporation.[2] Defendant Voogd admits the transactions in question, but denies that § 16(b) applies to them [3]; relying mainly on the allegations that he was not an officer of Selas Corporation of America within the meaning of § 16(b).[4]

The background for the transactions in question begins June 14, 1967. At that time, Voogd was employed by Selas of America (Nederland) N.V. (hereinafter referred to as SAN), as Managing Director. SAN was both an operational unit and a holding company for Selas' other foreign subsidiaries, branches and divisions. At that time, and at all times relevant to this action, SAN was a wholly owned subsidiary of plaintiff, Selas Corporation of America (hereinafter referred to as Selas).

On June 14, 1967, Voogd was granted a stock option to purchase 2,500 shares of Selas stock at $13.25 per share.[5] The option [6] could not be exercised for three years, but must be exercised within four years. Therefore, Voogd could exercise the option at anytime between June 14, 1970 and June 14, 1971. On September 15, 1967, Voogd was elected Vice-President for European Operations of Selas,[7] continuing to function as Managing Director of SAN. On October 1, 1970, Voogd was made Executive Vice-President International of Selas.[8] He remained in that capacity until September of 1971, when a controlling interest of

1. Plaintiff's complaint, ¶ 1.

2. Defendant's memorandum, page 10.

3. Defendant's answer, ¶¶ 5, 6, 7 and 8.

4. Defendant's answer, ¶ 9.

5. Defendant's answer, ¶ 5.

6. Defendant's exhibit 1.

7. Defendant's affidavit ¶ 4.

8. Defendant's affidavit ¶¶ 8, 9, and plaintiff's exhibit 2.

SAN was purchased by a group of key European employees.[9]

On June 14, 1970, when the stock option first became exercisable, the market price of plaintiff's stock was $10.625 per share.[10] On April 27, 1971, Voogd exercised his full option to purchase 2,500 shares of Selas stock at $13.25 per share.[11] On that date, the market price of the stock was $38.00 per share.[12] On May 27, 1971, Voogd sold 2,500 shares of Selas stock at a price of $36.50 per share.[13]

On these facts, which are admitted to by the parties, plaintiff contends that he is entitled to summary judgment. Defendant countered that argument with an allegation that there is an issue of fact to be resolved, namely, was Voogd in fact an officer of Selas—or was he merely a figurehead, having no say in the affairs of Selas and having no access to inside information of Selas; and that, as such, he is not an officer for purposes of § 16(b)[14].

In deciding plaintiff's motion for summary judgment, this court must determine if the pleadings and affidavits filed in this case show that there is no genuine issue as to any material fact (Rule 56(c), Fed.R.Civ.Proc.). For this purpose, we will view all the facts and inferences to be drawn therefrom in the light most favorable to defendant. Voogd admits that at the times relevant to the purchase and sale in question, he was the Executive Vice-President of International Operations of Selas. Rule 3b–2 (17 CFR § 240.3b–2) of the Securities and Exchange Commission defines the term "officer" as ". . . a president, vice-president, treasurer, secretary, comptroller, and any other person who performs for an issuer, whether incorporated or unincorporated, functions corresponding to those performed by the foregoing officers." Taken literally,

Voogd, as a Vice-President of Selas, is clearly within the enumerated class, and as such, would be an officer within the meaning of § 16(b). However, defendant contends that Rule 3b–2 does not create a conclusive presumption that one holding such an office is automatically an insider, and thus liable for the profits from insider trading under the terms of § 16(b).

The validity and effect of Rule 3b–2 has not been clearly established. The leading case in this area appears to be Colby v. Klune et al., 178 F.2d 872 (2d Cir. 1949). In this case, the court reversed the district court's granting of a summary judgment for the plaintiff, holding at page 875:

> "It may be that the S.E.C. had such statutory authority to issue the Rule [15] that it binds the courts. Even so, there remains much room for inquiring into the facts at a trial. For the functions of a 'vice-president' or 'comptroller' are not so well settled as to be self-evident, and there is need for evidence concerning those functions. Under that Rule as we interpret it, it does not matter whether or how the by-laws of this particular company define the duties of such officers. The question is what this particular employee was called upon to do in this particular company, i. e., the relation between his authorized activities and those of this corporation."

The court further suggests the type of evidence which should be illicited by the trial court, stating:

> "Counsel for the SEC, in a memorandum filed with us, says that it is significant that the employee has or has not responsibility for the policy of at least a substantial segment of the corporation's affairs and participates in executive councils of the corporation as an officer. We think the trial

---

9. Defendant's memorandum, page 1.

10. Defendant's answer, ¶ 6.

11. Defendant's affidavit, ¶ 17.

12. Defendant's answer, ¶ 7.

13. Defendant's answer, ¶ 8.

14. Defendant's memorandum, page 7.

15. The rule in question in the *Colby* case is Rule X–3b–2, the predecessor of the present rule 3b–2.

court should receive evidence pertinent to that issue, but should reserve decision as to its legal significance until after the trial."

The court in *Colby* questioned the validity of Rule X–3b–2, but reserved judgment on that point because the affidavits submitted in support of a summary judgment raised an issue of credibility, which could only be decided at trial. The *Colby* case was followed in the recent case of Schimmel v. Goldman, 57 F.R.D. 481 (S.D.N.Y.1973) holding, in approval of a settlement, that there was a genuine issue to be resolved and that a settlement for less than the amount claimed was justified. In accord with this is a recent case from the Eastern District of Virginia, Gold v. Scurlock, 324 F.Supp. 1211 at 1215 (1971), where the court stated: "Being a corporate officer without portfolio does not per se make him an 'insider' as contemplated in Section 16(b)."

However, this argument is to no avail to defendant Voogd. The affidavits and exhibits submitted by the plaintiff, in support of its motion for summary judgment, clearly indicate that Voogd was one of the more active members of the executive committee, and that he was the chief operating officer of the most important section of plaintiff's business which, at that time, was producing most of the profits for Selas.[16] The minutes of the executive committee meetings, submitted by plaintiff in support of its motion for summary judgment (exhibits numbers 4 through 8) show that defendant Voogd had intimate knowledge of the innerworkings of Selas,[17] that he had a substantial voice in policy of the corporation,[18] and in fact, functioned as a corporate officer. The other exhibits submitted by plaintiff (Board Meeting Minutes and various memoranda) reinforce this proposition. Even taking the

defendant's own language where he states that: "My only duty was to report to plaintiff on SAN's operations",[19] coupled with his position as Executive Vice-President of Selas in charge of the section of the corporation which contributed a major portion of Selas' business and produced the bulk of Selas' profit, and his position on the executive committee of Selas where the affairs of the entire corporation were discussed and acted upon, it cannot be said that he did not have access to inside information as contemplated by § 16(b) of the Act.

In response to plaintiff's allegations, defendant merely denies that he was in fact an officer, claiming to be merely a figurehead, but nowhere does defendant specifically contest the contents of the exhibits of plaintiff referred to earlier. A mere denial under Rule 56 of the Federal Rules of Civil Procedure is not sufficient to prevent the issuance of summary judgment, based on affidavits by the moving party. Robin Construction Co. v. United States, 345 F.2d 610 (3d Cir. 1965).

Accordingly, we hold that defendant Voogd was an officer of Selas Corporation of America, within the meaning of Rule 16(b), and as such, would be liable to the corporation for the profits from transactions covered by that Rule.

Having found the defendant was an officer of Selas within the meaning of § 16(b), we turn to defendant's contentions that he did not act on the basis of inside information and that he was not aware that his actions would violate the Securities Laws. First, defendant's contention that he was not aware of the consequences of his actions under the Securities Law is without merit. Section 16(b) establishes liability, irrespective of any intention on the part of the insider. Petteys v. Butler, 367 F.2d 528, 532 (8th Cir. 1966), cert.

---

16. Plaintiff's exhibit no. 6.

17. For example, see plaintiff's exhibit no. 6 (Minutes of Executive Committee Meeting, held February 15, 1971) where the forthcoming annual report is discussed.

18. For example, see plaintiff's exhibit no. 8 (Minutes of Executive Committee Meeting, held June 2, 1971) where defendant reports on negotiations for acquisition of another subsidiary and on his recent trip to Japan.

19. Voogd affidavit, paragraph 4.

denied, 385 U.S. 1006, 87 S.Ct. 712, 17 L.Ed.2d 545 (1967). Defendant's contention that he did not act on the basis of inside information also fails. The Act does not require an actual showing of the use of inside information for the transactions in question. B. T. Babbitt, Inc. v. Lachner, 332 F.2d 255, 257 (2d Cir. 1964).

Now we turn to the issue of damages. The situation in this case is governed by Rule 16b–6 of the SEC, dealing with the exercise of its stock option.[20] This Rule limits the profits which the issuer can recover from transactions involving stock options under § 16(b) to the difference between the proceeds of sale and the lowest market price of any security of the same class within 6 months before or after the date of sale. In this case, defendant sold his shares on May 27, 1971, for $36.50 per share. The lowest price through which Selas stock traded within 6 months of May 27, 1971, occurred on November 26, 1971; this price was $13.6875 per share.[21] Thus, for purposes of § 16(b) the profit per share in this case was $22.8125 per share, or $57,031.25 for the 2,500 shares in question.

Defendant urges the court to use a different method in calculating the profit, claiming that there should be an equitable inquiry into the extent to which the option constituted compensation, and as such, would not be considered a profit under § 16(b). The cases that defend-

ant cites in support of this proposition were all decided prior to the adoption of Rule 16b–6 by the SEC. The validity of Rule 16b–6 has not been challenged. We hold it is controlling here, and plaintiff is entitled to an award in accordance with its provisions.

---

20. "§ 240.16b–6 Exemption of long term profits incident to sales within six months of the exercise of an option.

(a) To the extent specified in paragraph (b) of this section the Commission hereby exempts as not comprehended within the purposes of section 16(b) of the act any transaction or transactions involving the purchase and sale or sale and purchase of any equity security where such purchase is pursuant to the exercise of an option or similar right either (1) acquired more than six months before its exercise, or (2) acquired pursuant to the terms of an employment contract entered into more than six months before its exercise.

(b) In respect of transactions specified in paragraph (a) of this section the profits in-

uring to the issuer shall not exceed the difference between the proceeds of sale and the lowest market price of any security of the same class within six months before or after the date of sale. Nothing in this section shall be deemed to enlarge the amount of profit which would inure to the issuer in the absence of this section."

21. The actual market price on November 26, 1971, was $9.125 per share which, when adjusted for a 3 for 2 stock split results in an equivalent market price of $13.6875 per share. (plaintiff's memorandum, pp. 2–3) This information is a matter of public record and defendant offers no evidence contra.