Lawrence ROSENBLOOM, Appellant,

v.

ADAMS, SCOTT & CONWAY, INC., et al., Appellees.

No. 75–2250.

United States Court of Appeals, Ninth Circuit.

April 29, 1977.

As Corrected on Denial of Rehearing June 21, 1977.

---

Robert M. Aran, argued, Beverly Hills, Cal., for appellant.

Alvin Wechsler, argued, Beverly Hills, Cal., for appellees.

Before CHAMBERS, KOELSCH and HUFSTEDLER, Circuit Judges.

## OPINION

HUFSTEDLER, Circuit Judge:

Rosenbloom appeals from a judgment dismissing his action against appellees entered after the district court granted appellees' motion to dismiss for want of subject matter jurisdiction and for failure to state a claim for relief. Rosenbloom asserted jurisdiction based upon alleged violations of the Federal Securities Laws (15 U.S.C. § 78aa (1971), Rule 10b–5 (17 C.F.R. § 240.10b–5 (1976))), diversity of citizenship, and pendant jurisdiction over state claims concerning breach of contract and common law fraud. In substance, Rosenbloom contends that appellees' misrepresentations and conduct induced him to part with certain securities and to enter into an employment agreement to his detriment. Appellees' motions were accompanied by affidavits. The district court concluded that appellant's sta-

tus as an insider foreclosed his 10b–5 claim, that complete diversity was lacking, and that the pendant state claims should not be retained. We reverse because the pleadings, although inartfully drawn, were sufficient to withstand a jurisdictional attack as well as a motion to dismiss for failure to state a claim.

The background for this drama is a series of corporate mergers and spawnings. Rosenbloom, a California resident, and a third person, Warwick Feldman, owned a California corporation called Lawson, Stewart & McCory. Appellee Schapiro, a New York resident, owned a New Jersey corporation called Scott Brokerage Corp. In 1972 the two corporations were consolidated under the banner of Lawson, Stewart & McCory ["LS&M"] and Schapiro, Rosenbloom, and Feldman divided the LS&M stock as follows: Schapiro 1,200,000 shares, Rosenbloom 800,000 shares, and Feldman 400,000 shares. Rosenbloom's former corporation also owned a subsidiary California corporation called Professional Insurance Administrators, Inc. As part of the LS&M merger, Professional Insurance Administrators, Inc. shares were distributed to Rosenbloom, Feldman, and Schapiro, who, in turn, exchanged the latter shares for LS&M shares. LS&M, after several name changes, became "Adams, Scott & Conway, Inc.," a Delaware corporation ["ASC Del"]. The end product of the several corporate transformations was that Schapiro owned 78,750 shares of ASC Del, Rosenbloom owned 52,500 shares of ASC Del, and Feldman owned the remainder. During the course of the same transactions, Rosenbloom and Schapiro agreed in writing that they would vote their ASC Del shares together and orally agreed that Rosenbloom would receive the same salary and benefits as Schapiro. ASC Del owned and totally dominated two California subsidiaries: Adams, Scott & Conway, Insurance Agents and Brokers, Inc. and Adams, Scott & Conway, Inc. ["ASC Cal"]. Rosenbloom was a minority shareholder and director of ASC Del and chairman of the board of ASC Cal. Schapiro is alleged to have controlled both ASC Del and ASC Cal.

Rosenbloom was employed by ASC Del at a salary of $150,000 per year.

Rosenbloom avers that he relied upon Schapiro's fraudulent assurance of Rosenbloom's continued participation in ASC Del when he contributed 26,250 shares of ASC Del to that corporation, which contribution deprived him of all of his authority in ASC Cal. Rosenbloom also claims that Schapiro siphoned off LS&M assets via ASC Cal to ASC Del. Rosenbloom further alleges that as a part of Schapiro's design to obtain control of the assets, Schapiro continued his assurances to Rosenbloom that Rosenbloom would have an equal footing with him in both ASC Del and ASC Cal. However, Schapiro paid himself more than Rosenbloom and, in 1974, Schapiro caused Rosenbloom to be discharged from his employment and forced him out of the enterprise. Rosenbloom's complaint does little to untangle the skeins of these corporate webs. But we can identify Rosenbloom's contention that Schapiro and his corporate co-defendants are charged with inducing Rosenbloom to part with his stock and to change his position in respect of his employment by making false statements about their respective intents and about the financial situation of the corporations involved.

We begin our analysis with a brief discussion of the procedural posture of this case. The motions to dismiss should be treated as motions for summary judgment because matters outside the pleadings were presented to the district court. Appellees had filed "speaking motions" to dismiss for want of subject matter jurisdiction. (". . . Plaintiffs are correct in their assertion that Rule 12(b) requires Rule 56 treatment when a motion to dismiss for failure to state a claim (Rule 12(b)(6)) is made and 'matters outside the pleading are presented to and not excluded by the court.'" *Timberlane Lumber Co. v. Bank of America, N. T. & S. A.* (9th Cir. 1977) 549 F.2d 597, 601. *Accord, Cohen v. Cahill* (9th Cir. 1960) 281 F.2d 879, 880; *Dayco Corp. v. Goodyear Tire & Rubber Co.* (6th Cir. 1975) 523 F.2d 389, 392.) Under *Timberlane Lumber Co., supra,* "when a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiffs' substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous." (*Timberlane Lumber Co. v. Bank of America, N. T. & S. A., supra,* 549 F.2d at 602.)

Although the complaint is not artistically drawn, we cannot say that the complaint is frivolous. Rosenbloom alleged that Schapiro, via the mail, falsely promised Rosenbloom that he would keep Rosenbloom in the business. Relying on this promise, Rosenbloom transferred his stock to ASC Del to his financial detriment. Rosenbloom also averred that appellees made false statements and misleading omissions concerning the company's financial situation and that they further induced the transfer of his securities by orally agreeing to give him certain employment and salary benefits while at the same time harboring a fraudulent intent not to perform the agreement. He characterizes his stock transfer as "a contribution." To be sure, if Rosenbloom's stock transfer was not a sale, but a donation without consideration, Rosenbloom has not stated a claim for relief under 10b–5 because he has made neither a purchase nor a sale of securities within the meaning of the Rule. However, Rosenbloom's averments are subject to the inference that Rosenbloom transferred his stock as a part of the consideration for the false promises that he has alleged. Rosenbloom should have an opportunity to amend his pleadings to permit an appropriate determination of the character of the transfer.

The district court appears to have relied almost entirely upon its view that Rosenbloom's status as an "insider" foreclosed any recovery under 10b–5. Rosenbloom occupied several different positions, including minority shareholder and director of ASC Del, and chairman of the board of ASC Cal, which would permit the label "insider" to be pinned upon him. The label, however, is not determinative of the rights and liabilities of those persons who are suing and

being sued for 10b–5 violations. The term "insider" is simply a shorthand description of those people who, by reason of their activities within a corporation, have access to information capable of being exploited, or information that would negate the harmful effects of a nondisclosure or misrepresentation. (*Myzel v. Fields* (8th Cir. 1967) 386 F.2d 718, 736; *Harnett v. Ryan Homes, Inc.* (W.D.Pa.1973) 360 F.Supp. 878, 885–87, *aff'd* (3d Cir. 1974) 496 F.2d 832. *See also,* 2 A. Bromberg, Securities Law § 7.4(6)(b), p. 180 (1975).) A director, officer, or even the president of a corporation often has that superior knowledge and information, but neither the knowledge nor the information invariably attaches to those positions. (*Id.* and *Harnett v. Ryan Homes, Inc., supra,* 360 F.Supp. at 886.) Knowledge and access to inside information do not always follow titles on an organizational chart; the persons who hold any one of these titles may, in fact, be figureheads. Of course, the person who accepts corporate titles for the honor of it all may find that he has assumed a substantial burden of overcoming inferences of privileged information and knowledge that are properly drawn from his status. As Professor Bromberg has correctly observed: ". . . Occasionally insiders have been plaintiffs, but they have typically lost, on one legal theory or another. When they have prevailed, it is because the defendants are measurably more 'inside' in terms of knowledge or control or both." (1 A. Bromberg, Securities Law § 4.4, p. 76 (1975) (footnotes omitted). *See also, Rochez Bros., Inc. v. Rhoades* (3d Cir. 1974) 491 F.2d 402, 409–10; Wheeler, R., Plaintiff's Duty of Due Care under Rule 10b–5: An Implied Defense to An Implied Remedy, (1975) 70 Nw.U.L.Rev. 561.)

The sole support for the district court's conclusion that Rosenbloom was an insider who is foreclosed from recovery for violations of 10b–5 is the fact that Rosenbloom was an insider in the organizational sense. We have discovered no authority, and we are unwilling to supply any, to support the proposition that one who occupies a position on the organizational chart, as did Rosenbloom, is an "access" insider as a matter of law. To the extent that our court has addressed the issue, the authority points the other way. (*Cf., Hilton v. Mumaw* (9th Cir. 1975) 522 F.2d 588, 596 (10b–5 action by heirs of the decedent, co-founder, director, and secretary of the corporation was not barred by insider theory.).)

Rosenbloom has sworn that the ASC Del board of directors held no meetings since sometime in 1973, and that he exercised no control over its operation or business practices. He stated that he was totally unaware of appellees' intentions to remove him and that appellees' intentions were fraudulently concealed. He also stated that appellees controlled the financial reports of ASC Del and Cal and that those reports were not furnished to him when he asked for them.

Under these circumstances, genuine issues of fact exist concerning Rosenbloom's access to information and his knowledge about various corporate affairs. He may have a formidable problem in sustaining his burden of proof at trial, but summary judgment cannot deprive him of an opportunity to try.

In view of the necessity for a reversal and remand of the 10b–5 claim, it is unnecessary for us to reach the questions that have been raised concerning the existence of alternative grounds for federal jurisdiction based upon diversity of citizenship. Likewise, we have no occasion to comment about the pendant state claims. The district court's exercise of its discretionary powers in dismissing the pendant state claims rested upon its dismissal of the federal claims. Our reversal on the 10b–5 claim causes us to vacate the dismissal of the pendant state claims.

The dismissal of the pendant state claims is vacated, the judgment is reversed, and the cause is remanded to the district court for further proceedings consistent with the views herein expressed.