MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff-Appellee,

v.

William G. LIVINGSTON, Defendant-Appellant.

No. 75–3779.

United States Court of Appeals, Ninth Circuit.

Jan. 4, 1978.

G. Douglas Kranwinkle (argued), of Munger, Tolles & Rickershauser, Los Angeles, Cal., for defendant-appellant.

Joel Mark (argued), of MacDonald, Halsted & Laybourne, Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and KILKENNY, Circuit Judges, and GRANT,* District Judge.

HUFSTEDLER, Circuit Judge:

Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") obtained judgment against its employee Livingston requiring him to pay Merrill Lynch $14,836.37 which was the profit that he made on short-swing transactions in the securities of his employer in alleged violation of Section 16(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78p (1971)). We reverse because Livingston was not an officer with access to inside information within the purview of Section 16(b) of the Securities Exchange Act of 1934.

From 1951 to 1972, Livingston was employed by Merrill Lynch as a securities salesman with the title of "Account Executive." In January, 1972, Merrill Lynch began an "Account Executive Recognition Program" for its career Account Executives to reward outstanding sales records. As part of the program, Merrill Lynch awarded Livingston and 47 other Account Executives the title "Vice President." Livingston had exactly the same duties after he was awarded the title as he did before the recognition. Livingston never attended, nor was he invited or permitted to attend, meetings of the Board of Directors or the Executive Committee. He acquired no executive or policy making duties. Executive and managerial functions were performed by approximately 350 "Executive Vice Presidents."

Livingston received the same kind of information about the company as an Account Executive both before and after he acquired his honorary title. As an Account Executive, he did obtain some information that was not generally available to the investing public, such as the growth production rankings on the various Merrill Lynch retail offices. Information of this kind was regularly distributed to other salesmen for Merrill Lynch. Livingston's supervisor, a branch office manager, testified that he gave Livingston the same kind of information that he gave other salesmen about the company, none of which was useful for purposes of stock trading.

In November and December, 1972, Livingston sold a total of 1,000 shares of Merrill Lynch stock. He repurchased 1,000 shares of Merrill Lynch stock in March, 1973, realizing the profit in question.

The district court held that Livingston was an officer with access to inside information within the meaning of Section 16(b) of the Securities Exchange Act of 1934. The predicate for the district court's decision was that Section 16(b) imposes strict liability on any person who holds the title of "officer" and who has access to information about his company that is not generally available to the members of the investing public.

The district court used an incorrect legal standard in applying Section 16(b). Liability under Section 16(b) is not based simply upon a person's title within his corporation; rather, liability follows from the existence of a relationship with the corporation that makes it more probable than not that the individual has access to insider information. Insider information, to which Section 16(b) is addressed, does not mean all information about the company that is not public knowledge. Insider information within the meaning of Section 16(b) encompasses that kind of confidential information about the company's affairs that would help the particular employee to make decisions affecting his market transactions in his employer's securities.

Strict liability to the issuer is imposed upon any "beneficial owner, director, or officer" for entering into such a short-

swing transaction "[f]or the purpose of preventing the unfair use of information which may have been obtained by such . . . officer by reason of his relationship to the issuer." "The purpose of the statute was to take 'the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great' and to prevent the use by 'insiders' of confidential information, accessible because of one's corporate position or status, in speculative trading in the securities of one's corporation for personal profit." (*Gold v. Sloan* (4th Cir. 1973) 486 F.2d 340, 342, *quoting Reliance Electric Co. v. Emerson Electric Co.* (1972) 404 U.S. 418, 422, 92 S.Ct. 596, 30 L.Ed.2d 575.

■ To achieve the beneficial purposes of the statute, the court must look behind the title of the purchaser or seller to ascertain that person's real duties. Thus, a person who does not have the title of an officer, may, in fact, have a relationship to the company which gives him the very access to insider information that the statute was designed to reach. Thus, in *Colby v. Klune* (2d Cir. 1949) 178 F.2d 872, the employee's title was "Production Manager." (*See Colby v. Klune* (S.D.N.Y.1949) 83 F.Supp. 159, 161.) Relying upon that title, the district court held that the defendant was excluded from the purview of the statute. The Second Circuit reversed and remanded for a factual inquiry into the question whether, despite his title, the defendant was nevertheless an officer within the meaning of the statute. The court defined "officer" as: "a corporate employee performing important executive duties of such character that he would be likely, in discharging those duties, to obtain confidential information about the

company's affairs that would aid him if he engaged in personal market transactions. It is immaterial how his functions are labeled or how defined in the by-laws, or that he does or does not act under the supervision of some other corporate representatives." (178 F.2d at 873.)

Job labels were no more significant to the Fourth Circuit in *Gold v. Sloan, supra*, 486 F.2d 340. One of the defendants, Rumbel, had the title of Vice President. However, his title was purely " 'titular' and not real" (486 F.2d at 351), because he neither performed any important executive duties nor was his actual job one that put him in a position of being able to acquire confidential information about the company's affairs that could have given him any advantage in dealing in the corporate securities. Rumbel had no access to the inside information concerning the merger which resulted in the exchange of stock at issue in the case. He was as ignorant of the merger developments as any outside stockholder.[1]

■ The title "Vice President" does no more than raise an inference that the person who holds the title has the executive duties and the opportunities for confidential information that the title implies. The inference can be overcome by proof that the title was merely honorary and did not carry with it any of the executive responsibilities that might otherwise be assumed. The record in this case convincingly demonstrates that Livingston was simply a securities salesman who had none of the powers of an executive officer of Merrill Lynch.[2]

■■ Livingston did not have the job in fact which would have given him presumptive access to insider information.[3] Infor-

---

1. For additional cases where job label was not dispositive of liability under § 16(b), see *Selas Corp. of America v. Voogd*, 365 F.Supp. 1268 (E.D.Pa.1973); *Schimmel v. Goldman*, 57 F.R.D. 481 (S.D.N.Y.1973); *Lockheed Aircraft Corp. v. Campbell*, 110 F.Supp. 282 (S.D.Cal. 1953); *Lockheed Aircraft Corp. v. Rathman*, 106 F.Supp. 810 (S.D.Cal.1952).

2. We reached a similar conclusion on similar reasoning in *Rosenbloom v. Adams, Scott & Conway, Inc.* (9th Cir. 1977) 552 F.2d 1336, 1338–39, in holding that plaintiff's corporate title was hollow and that, accordingly, he was

not an insider within the meaning of Rule 10b–5. Although Rosenbloom's title implied access to insider information, he claimed that he did not in fact have access to any inside information. We reversed a judgment of dismissal and remanded the case for a trial on the facts ultimately to be developed.

3. A different issue is presented when an employee's honorary title provides no presumptive access to insider information, but the employee nevertheless had actual access to insider information. That issue is not presented here.

mation that is freely circulated among non-management employees is not insider information within the meaning of Section 16(b), even if the general public does not have the same information. Employees of corporations know all kinds of things about the companies they work for and about the personnel of their concerns that are not within the public domain. Rather, insider information to which Section 16(b) refers is the kind of information that is commonly reserved for company management and is thus the type of information that would "aid [one] if he engaged in personal market transactions." (*Colby v. Klune, supra,* 178 F.2d at 873.)

Livingston did not receive insider information within the meaning of Section 16(b). The only information that he received was that generally available to all Merrill Lynch salesmen. It was not information reserved for company management, nor was it in any way useful to give him any kind of advantage in his security transactions over any other salesmen for Merrill Lynch.

REVERSED.

KILKENNY, dissenting:

I would hold that the findings of the district court, being based upon inferences drawn from the undisputed facts and the documentary evidence, are not clearly erroneous and that the judgment of the district court should be affirmed. Because the taint of short swing trading by a vice-president causes subjective damage to the issuer by eroding shareholder confidence in the integrity of management, the penalties of Section 16(b) should here be applied. *Champion Home Builders Co. v. Jeffress,* 490 F.2d 611, 619 (CA6 1974), *cert. denied* 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763. We have before us a purchase and sale by a vice-president within the six month period. Here, the district court found that Livingston had not rebutted the presumption that he had the potential for access to inside information and, at least, that he had the

opportunity to gain access to such information. *Makofsky v. Ultra Dynamics Corp.,* 383 F.Supp. 631, 640 (S.D.N.Y.1974).

Manifestly, the statute raises a presumption that a person who holds the title of vice-president has the executive duties and the opportunities for confidential information that the title implies. I agree that this presumption can be overcome. However, I would hold that whether the presumption is overcome is an issue to be decided by the trier of the facts. Consequently, on this record, we cannot say as a matter of law that the appellant fulfilled this burden. In *Rosenbloom v. Adams, Scott & Conway, Inc.,* 552 F.2d 1336 (CA9 1977), a case cited by appellant, arising under 15 U.S.C. § 78aa (1971), Rule 10b–5 (17 C.F.R. § 240.10b–5 (1976)), the court concluded that since genuine issues of fact existed concerning Rosenbloom's access to information and his knowledge about various corporate affairs, the court could not decide the question as a matter of law. There, the case had been decided by the lower court on a motion for summary judgment. Here, there was a full-fledged trial and the judge made findings of fact, including a finding that appellant was an officer of the company with access to inside information within the meaning of Section 16(b).

The majority argues with the district court on whether the evidence, documentary and otherwise, and the inferences to be drawn therefrom, was sufficient to support the findings. In so doing, it completely overlooks the fact that appellant took the witness stand and was exhaustively interrogated by the court on possible inside information. This conversation consumed at least fifteen pages of the transcript. Thus, the court had an opportunity to see and observe this witness and pass on his credibility. After this· thorough interrogation, the court found that appellant sought no advice from any of the appellee's officers with reference to the permissibility of the sales under Section 16(b), but to the con-

trary that he had been informed by appellee's policy bulletins that the trades were improper. The court further found that the appellant was an "officer" of the appellee within the meaning of Section 16(b) of the Securities & Exchange Act of 1934 and that appellant had access to "inside information" within the meaning of that Act. By necessary implication, the district court found that appellant had failed to overcome the presumption created by Section 16(b).

Even if the facts were undisputed, the clearly erroneous rule would apply if, as here, different inferences could be drawn from those facts. *Lundgren v. Freeman*, 307 F.2d 104, 114–115 (CA9 1962). This rule has been approved by us as recently as *United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106, 1107–1108 (CA9 1976). Moreover, the appellee is entitled to have the evidence viewed in a light most favorable to it and to have the benefit of all reasonable inferences. *United States v. Babbs*, 483 F.2d 308, 312 (CA9 1973).

Because the district court held that appellant was a vice-president and an officer within the meaning of Section 16(b) and had access to inside information, and had a right to draw inferences to that effect from the documentary evidence and live testimony received, I would hold that the findings are not clearly erroneous and that the judgment of the lower court should be affirmed.

On these findings, Section 16(b) imposes liability without fault. *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 251, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976); *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973).

The judgment of the district court should be affirmed.