**Charles D. WINSTON, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

No. 86–2421 GA.

United States District Court, W.D. Tennessee, W.D.

April 23, 1987.

**648**

Ronald Lee Gilman, Memphis, Tenn., for plaintiff.

Veronica F. Coleman, Memphis, Tenn., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GIBBONS, District Judge.

Plaintiff became an employee of defendant Federal Express Corporation (Federal Express) in September, 1981, when he was hired to the position of Vice President of Network Systems. He was subsequently promoted to Senior Vice-President of Electronic Products in 1983.

On August 27, 1985, plaintiff tendered his resignation from Federal Express, to become effective September 30, 1985. On September 30, 1985, plaintiff exercised his option to acquire 8,298 shares of Federal Express stock. Plaintiff sold these shares on March 26, 1986, realizing a profit of $176,569.75. Defendant Federal Express has withheld this amount from plaintiff on its determination that the transaction fell within section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), which provides that any profit realized by a beneficial owner, officer, or director of an issuer of stock from the purchase and sale of that issuer's stock within any period of less than six months shall be retained by the issuer to prevent the unfair use of inside information. Plaintiff brought suit to recover his profits, alleging that, because he did not actively participate in the duties of his office after August 27, 1985, he could not be considered an officer of the corporation for purposes of section 16(b). Both parties have moved for summary judgment on the issue of plaintiff's status as an officer. While the question is an extremely close one, the court finds that plaintiff was an officer within the meaning of section 16(b) for the reasons set forth below.

The purpose of Congress in enacting section 16(b) was to protect the public from the "evils of insider trading" by enacting "a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972). Because Congress intended section 16(b) to be a "relatively arbitrary rule capable of easy administration," *Bershad v. McDonough*, 428 F.2d 693, 696 (7th Cir.1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440 (1971), courts have sought to interpret section 16(b) in a way that will preserve its "mechanical qualities." *Reliance Electric Co.*, 404 U.S. at 425, 92 S.Ct. at 600. Thus, in deciding whether an individual is an officer for purposes of section 16(b), courts generally look exclusively to the title he or she holds. *National Medical Enterprises, Inc. v. Small*, 680 F.2d 83, 84 (9th Cir.1982) (*per curiam*). A "very limited exception" occurs where the title is "essentially honorary or ceremonial," *id.; Merrill Lynch, Pierce, Fenner, & Smith v. Livingston*, 566 F.2d 1119, 1122 (9th Cir.1978), or where an unorthodox transaction is involved. *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 594, 93 S.Ct.

1736, 1744, 36 L.Ed.2d 503 (1973); *Gold v. Sloan*, 486 F.2d 340, 357 (4th Cir.1973).

■ When one of these exceptions is present, courts are permitted to inquire whether the duties performed by the individuals in question would normally lead to access to confidential information,[1] although courts may not inquire whether a particular officer had access. The honorary title exception "does not open the door to a detailed factual inquiry in each case as to the officer's actual access to confidential information...." *Nat'l Medical Enterprises*, 680 F.2d at 84.

■ Particularly instructive for the present case is *Merrill Lynch, supra,* where the court set forth the relevant inquiry for a case involving the honorary title exception:

> The title "Vice President" does no more than raise an inference that the person who holds the title has the executive duties and the opportunities for confidential information that the title implies. The inference can be overcome by proof that the title was merely honorary and did not carry with it any of the executive responsibilities that might otherwise be assumed.

*Merrill Lynch*, 566 F.2d at 1122.

In the present case it is clear that before August 27, 1985, plaintiff's title equalled his duties. As Senior Vice-President of Electronic Systems, he was responsible for the development and implementation of electronic products and systems for Federal Express, including its ZapMail document delivery service. He also participated in both short and long term planning for the corporation, which included access to confidential financial and research information. Affidavit of Thomas R. Oliver at 2, Exhibit 3, Defendant's Memorandum in Support of Motion for Summary Judgment.

However, plaintiff ceased performing any active duties on August 27, 1985, when a new Senior Vice President replaced him. Affidavit of Charles D. Winston at 1–2, Exhibit 7, Plaintiff's Memorandum in Support of Motion for Summary Judgment (hereinafter referred to as Plaintiff's Memorandum). While he made himself available to answer the questions of his successor, he was never in fact consulted. Supplemental Affidavit of Charles D. Winston at 1–2, Exhibit A, Plaintiff's Reply to Defendant's Motion for Summary Judgment. The corporation did ask plaintiff to execute a consulting agreement on August 30, 1985, which included a clause that stated:

> [H]e possesses substantial proprietary information which is or may become valuable assets of the Company, and ... he may obtain knowledge of additional such proprietary information during the term of this Agreement. Consultant hereby covenants and agrees that he will not on any occasion, during or after the term of this Agreement, disclose such information to any person except upon the express written authorization of the Company.

Exhibit 3, section 6, Plaintiff's Memorandum.

The court is thus presented with a unique fact situation. Up until August 27, 1985, plaintiff was clearly an officer within the contemplation of section 16(b). However, during the period in which the purchase took place, he had no active duties; he was an officer in name only. Yet, both parties were so cognizant of plaintiff's access to inside information that they entered into a contract of non-disclosure.

Using the guideline established in *Merrill Lynch*, the court is able to resolve this dilemma and conclude that plaintiff must be considered an officer within the mean-

---

**1.** Compare the relatively liberal inquiry permitted with unorthodox transactions and officers possessing honorary titles with the limited inquiry permitted where the case involves an officer whose title equals his duties engaging in a "garden variety" type of purchase and sale. In the latter, the law mandates the application of an objective test that permits no inquiry into the existence or non-existence of actual access or possible access to inside information. *Cf. Mahofsky v. Ultra Dynamics Corp.*, 383 F.Supp. 631, 636–37 (S.D.N.Y.1974); *Schur v. Zalzman*, 365 F.Supp. 725, 728 (S.D.N.Y.1973) (citing *Abrams v. Occidental Petroleum Corp.*, 450 F.2d 157, 162 (2d Cir.1971), aff'd sub nom, *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973).

ing of section 16(b). His title of Senior Vice President clearly equalled his duties up until August 27, 1985. This raises the presumption that he had the opportunity to obtain confidential information. The fact that he ceased performing active duties for a month before he purchases defendant's stock simply is not enough to overcome that presumption.

An examination of the facts of cases where an officer was found to hold only a ceremonial or honorary title supports this conclusion. In each instance, the individual in question had *never* possessed duties commensurate with his office; thus he had never had the opportunity to gain access to inside information. *See Merrill Lynch*, 566 F.2d at 1122 ("Livingston did not have the job in fact which would have given him presumptive access to insider information."); *Pier 1 Imports of Georgia, Inc. v. Wilson*, 529 F.Supp. 239, 244 (N.D.Tex. 1981) (officer had never attended a board meeting). In the one case where an officer had originally possessed some inside information, *Gold v. Scurlock*, 324 F.Supp. 1211 (E.D.Va.1971), *aff'd in part, rev'd in part sub nom., Gold v. Sloan*, 486 F.2d 340 (4th Cir.1973), the officer had "ceased being an important cog in the ARC machine in May of 1966"—more than a year before the transaction in question took place. Consequently, he was held not to be an officer for purposes of section 16(b). The one month during which plaintiff in the present case did not perform his active duties cannot compare with the length of time involved in *Gold;* the presumption of access to inside information is not rebutted. Accordingly, defendant's motion for summary judgment is granted, and that of plaintiff is denied.

IT IS SO ORDERED.