

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-2-2009

# USA v. Heron

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1061

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Heron" (2009). *2009 Decisions.* Paper 1597.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1597

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 08-1061 and 08-1622

_____

UNITED STATES OF AMERICA,

Appellant

v.

KEVIN HERON

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cr-674-01)
District Judge: Honorable Stewart Dalzell

_____

Argued February 5, 2009

Before: McKEE, JORDAN, and LOURIE*, *Circuit Judges.*

_____

Derek A. Cohen, Esq.
Office of United States Attorney,
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-0000

Robert A. Zauzmer, Esq.
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-0000
        *Attorneys for Appellant*

_____
*Honorable Alan D. Lourie, Circuit Judge of the United States Court of Appeals for the Federal Circuit sitting by designation.

Joseph J. Aronica, Esq.

Duane Morris LLP
505 9ᵗʰ Street, N.W.
Suite 1000
Washington, D.C. 20004-0000

Robert H. Dietrick, Esq.
Duane Morris LLP
505 9ᵗʰ Street, N.W.
Suite 1000
Washington, D.C. 20004-0000

*Attorneys for Appellee*

(Filed: April 2, 2009)

OPINION OF THE COURT

LOURIE, *Circuit Judge*.

On October 19, 2007, Kevin Heron was convicted of one count of conspiracy to commit securities fraud and three counts of securities fraud. Following that conviction, the United States District Court for the Eastern District of Pennsylvania, pursuant to Fed. R. Crim. P. 29(b), granted Heron's motion for a judgment of acquittal on three of the four counts. *United States v. Heron*, 525 F. Supp. 2d 729 (E.D. Pa. 2007). Acting *sua sponte*, the District Court granted Heron a new trial on those three counts in the event that the judgment on those counts is reversed on appeal. As for the fourth count, the District Court denied Heron's motion for a new trial. The Government appeals both the Court's grant in part of Heron's motion for judgment of acquittal and the Court's grant of a

2

conditional new trial. The Government also appeals the Court's sentencing decision regarding the upheld portion of Heron's conviction.

Because the Government's evidence was adequate to support the jury's conviction, we will reverse the District Court's grant of Heron's motion for judgment of acquittal on the three counts. Furthermore, because the Court abused its discretion in its conditional grant of a new trial, we will reverse that grant. We will also reverse the Court's decision not to apply a sentencing enhancement on Heron's conviction on Count 3.

I.      Background

Heron was employed as general counsel for Amkor Technology, Inc. ("Amkor") at all times relevant to this appeal. Amkor is a semiconductor manufacturer that is publicly traded on the NASDAQ stock exchange. Between October 2003 and July 2004, the period of time at issue in this case, Heron served as Amkor's chief insider trading compliance officer, in addition to his duties as general counsel.

During that time period, Heron made numerous trades in Amkor securities. The dollar amounts of those trades represented a substantial investment for an individual earning approximately $140,000 per year. The trades included purchasing 4,000 shares of Amkor stock on October 15, 2003, for approximately $60,000. Two weeks later, Heron sold 75% of those shares for a profit of $115,000. Later, in April 2004, Heron sold 17,000 shares of Amkor stock and traded in bearish Amkor options; those trades resulted in benefits to Heron of approximately $141,000. From May 24 through June 23, 2004,

3

Heron sold approximately 22,000 Amkor shares and again traded in bearish Amkor options, reaping a windfall to Heron of approximately $130,000. During the relevant time period, it appears that Heron made only one transaction involving Amkor securities that did not work to his financial benefit: a sale, on June 23, 2004, of twenty put options at a cost of $900.

The Government brought criminal charges against Heron based in part on the transactions listed above. On August 23, 2007, a grand jury returned a second superseding indictment, No. 06-674 (E.D.Pa. Aug. 23, 2007) (Dkt. No. 78) ("Second Superseding Indictment"), charging Heron with one count of conspiracy to commit securities fraud and three counts of securities fraud in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5.

Count 1 of the Second Superseding Indictment alleged that Heron had conspired with his neighbor, Stephen Sands, to exchange inside information concerning their respective companies. Counts 2 through 4 alleged that Heron had engaged in prohibited insider trading by buying and selling Amkor securities and options while in possession of material, non-public information concerning the company. Count 2 alleged that in October 2003, Heron bought Amkor securities while in possession of information relating to Amkor's yet-to-be-released Q3 2003 financial results. Count 3 alleged that in April 2004 Heron sold Amkor securities at a time when he possessed non-public knowledge of Amkor's Q1 2004 financial results. Count 4 alleged that Heron sold Amkor stock in May

4

and June 2004 while he knew of non-public information regarding Amkor's Q2 2004 financial results as well as a possible business deal between Amkor and another company, Unitive. On October 19, 2007, a jury convicted Heron on all four counts.

On December 19, 2007, the District Court granted in part Heron's motion for judgment of acquittal; the Court granted the motion as to Counts 1, 2, and 4, but denied the motion as to Count 3. Regarding Count 1, the Court found that Sands was not an insider and that "there is no evidence that Sands ever intended to trade on information he received from Heron." *Heron*, 525 F. Supp. 2d at 739. Therefore, according to the Court, the Government's charge of conspiracy to engage in prohibited insider trading was not supported by evidence that would permit a reasonable jury to convict Heron. Regarding Count 2, the Court found that "there is no evidence from which a reasonable jury could conclude beyond a reasonable doubt that [Heron] had" the information relating to Amkor's Q3 financial results at the time he purchased Amkor stock in October 2003. *Id.* at 743. Regarding Count 4, the Court found that neither the non-public information regarding the so-called "Unitive deal" nor the unreleased Q1 2004 financial results became material until the afternoon of June 10, 2004. The Court found that the Government had not provided evidentiary support that would permit a reasonable jury to conclude that Heron traded on the basis of that non-public information after June 10. *Id.* at 745-50. The Court denied Heron's motion as to Count 3. *Id.* at 743-44. Heron does not appeal that denial.

5

On the date Heron moved for judgment of acquittal, he also moved for a new trial under Fed. R. Civ. P. 33(a). Although the Court denied Heron's motion as untimely, the Court considered the motion *sua sponte*, invoking Fed. R. Civ. P. 52(b). *Heron*, 525 F. Supp. 2d at 751. In its analysis of the need for a new trial, the Court found "plain error" in the proceedings due to the Assistant U.S. Attorney's having "repeatedly misstated the standard for materiality of non-public information during his closing argument" and other "improper assertions" at closing. *Id.* at 751-52. Due to these prejudicial "plain errors," the Court granted a conditional new trial on Counts 1, 2, and 4. *Id.* at 753.

The Government timely appealed the District Court's grant of Heron's motion for judgment of acquittal on Counts 1, 2, and 4 and the conditional grant of a new trial. Heron did not appeal his conviction on Count 3 and was serving his sentence on that count at the time this case was argued on appeal. Additionally, the Government appealed the Court's sentencing decision as to Count 3. We have jurisdiction pursuant to 18 U.S.C. §§ 3731 & 3742 and 28 U.S.C. § 1291.

II.    Discussion

A.    Motion for Judgment of Acquittal on Counts 1, 2, and 4

An appeal from a grant of a motion for judgment of acquittal is subject to plenary review by this Court. *United States v. Brodie*, 403 F.3d 123, 133-34 (3d Cir. 2005) (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)). In doing so, we adopt the same standard employed by the District Court. *Id.* When a district court

6

reserves its ruling on a Rule 29 motion, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). In this case, Heron made his Rule 29(a) motion at the close of the Government's case and did not renew that motion at the close of all of the evidence. Thus, we must determine whether, after viewing the Government's evidence "in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

i. Count 1: Conspiracy to Commit Securities Fraud

Count 1 of the Second Superseding Indictment alleged that Heron and Sands conspired to commit securities fraud by exchanging "information regarding their respective companies, including material, non-public information . . . that they relied upon in making securities transactions in Amkor" and Sands' company, Neoware. Second Superseding Indictment, at 5, ¶ 9. After the jury verdict, the District Court granted Heron's motion for judgment of acquittal on Count 1, finding that Sands was not an insider, and therefore could not have provided material, non-public information to Heron. Furthermore, the Court found that there was no evidence that "Sands ever intended to trade on information he received from Heron." *Heron*, 525 F. Supp. 2d at 739.

We disagree with the District Court that no rational trier of fact could have found that Sands and Heron conspired to commit securities fraud. To prove conspiracy in this

7

case, the Government was required to show that (1) an agreement existed between Sands and Heron to exchange and, for trading purposes, use material, non-public information concerning their respective companies, and (2) at least one overt act in furtherance of that agreement occurred. *See* 18 U.S.C. § 371. The Court found that such a conspiracy between the two men to commit securities fraud was a legal impossibility because Sands, a low-level employee at Neoware, was not an insider. However, whether or not Sands was an insider for purposes of a hypothetical securities fraud action, and therefore legally capable of engaging in securities fraud, is irrelevant to the conspiracy charge. Legal impossibility is not a defense to a charge of conspiracy. *See, e.g., United States v. Hsu*, 155 F.3d 189, 203-04 (3d Cir. 1998). It is "the conspiratorial agreement itself, not the underlying substantive acts, that forms the basis for conspiracy charges." *Id.* at 203. Thus, for purposes of the conspiracy charge, the Government need only prove that Sands and Heron entered into an agreement to commit securities fraud, not that the two men could have been convicted of such an act.

Even if proof of insider status were required to prove a conspiracy charge, there was ample evidence from which a jury could have found that Sands was an insider. Sands had information on a business transaction with CVS which was not publicly available and which Neoware expected its employees to keep confidential. The mere possession of this information would allow a jury to infer that Sands was an insider. Furthermore, Sands' position at Neoware is not determinative of his insider status; rather,

8

the access to confidential information that his position provided him is determinative of his insider status. Thus, liability "is not based simply upon a person's title within his corporation; rather liability follows from the existence of a relationship with the corporation that makes it more probable than not that the individual has access to inside information." *Merrill Lynch v. Livingston*, 566 F.2d 1119, 1121 (9th Cir. 1978). In this case, the Government has provided evidence from which a reasonable jury could infer that Sands had access to inside information. Thus, a reasonable jury could have concluded that he was an insider.

The evidence in this case would permit a reasonable jury to find that there was an agreement between the two men. It is undisputed that Heron divulged highly material, non-public information to Sands regarding confidential business activities at Amkor. Furthermore, although the Government did not demonstrate where a low-level employee such as Sands obtained his information, the Government did present various e-mails in which Sands described non-public negotiations and future financial projections regarding his company, Neoware. Whether or not Sands actually possessed material information about Neoware, or was just engaging in speculation, the Government's evidence would certainly permit a jury to deduce that the men had entered into an agreement to exchange non-public information concerning their companies and trade on that information.

Furthermore, there was ample evidence from which a jury could conclude that an act in furtherance of the agreement had been performed. After receiving information

9

from Sands about a potential deal between Neoware and CVS, Heron purchased approximately $80,000 of Neoware stock, an investment that represented over 80% of his annual income. On another occasion, Heron purchased $23,000 of Neoware stock, informed Sands of the purchase, and stated that he was "waiting for the news." Additionally, Sands sold Amkor stock on April 15, 2004, the same day that Heron engaged in bearish trades on Amkor, and a date on which Heron was in possession of negative, non-public information regarding Amkor. In light of that evidence, a reasonable jury could have found that Heron and Sands entered into an agreement to exchange inside information and sell and trade securities based on that information. We therefore will reverse the District Court's grant of acquittal as to Count 1.

### ii. Count 2: Securities Fraud

Count 2 of the Second Superseding Indictment alleged that Heron engaged in insider trading in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b-5. Second Superseding Indictment at 11, ¶ 8. Heron purchased approximately 4,000 shares of Amkor stock between October 15-17, 2003. The Government alleged that he did so with knowledge that Amkor was going to announce positive earnings and guidance at month's end and that the Securities and Exchange Commission was not going to require Amkor to restate its financials. After the jury found Heron guilty, the District Court granted Heron's motion for acquittal on Count 2, finding that the information possessed by Heron relating to the SEC review was not material and that "there is no evidence from

which a reasonable jury could conclude beyond a reasonable doubt" that Heron possessed the Amkor earnings information on October 15, 2003. *Heron*, 525 F. Supp. 2d at 734. On appeal, the Government challenges only the District Court's findings regarding Heron's possession of Amkor's earnings information. Appellant's Br. at 41, n.15.[1]

For the Government to prove insider trading, it must show that the defendant has traded securities on the basis of material, non-public information. 17 C.F.R. § 240.10b-5. It is undisputed that on October 15, 2003, Amkor's Q3 financial results were material and non-public. The only dispute on appeal is whether a reasonable jury could have found, beyond a reasonable doubt, that Heron possessed knowledge of those results during the time he purchased Amkor securities.

We conclude that a reasonable jury could have found that he possessed such information. Heron bought 4,000 shares of Amkor stock two weeks before the October

---

[1]    Heron argues that he is entitled, at a minimum, to a new trial on Count 2 because, on appeal, the Government is pursuing only one of the theories of guilt that it pursued at trial. Thus, according to Heron, because we cannot know whether the jury would have found Heron guilty if presented with only the appealed theory, his Sixth Amendment right to a unanimous verdict would be violated if we were to reinstate the jury's verdict. Heron's argument is without merit, however, in light of our holding in *United States v. Syme*, 276 F.3d 131 (3d Cir. 2002). *Accord Griffin v. United States*, 502 U.S. 46 (1991). In *Syme*, we held that if evidence is insufficient to support a conviction on one theory that was charged to the jury but sufficient as to another theory, the jury verdict should stand, unless one of the theories is unconstitutional or legally invalid. *Syme*, 276 F.3d at 144. As the Government's abandoned theory of insider trading based on knowledge of the SEC review is not unconstitutional or legally invalid, we must decide only whether the appealed theory, that of possession of insider information of positive financial results, was sufficient for a reasonable jury to convict Heron.

27, 2003 release of the quarterly earnings report. That purchase was made at a time when Amkor employees were forbidden under company policy from buying or selling Amkor stock. After the earnings release, Heron promptly sold 3,000 of those shares for a profit of over $11,000. Standing alone, Heron's trading pattern, which involved an investment of the majority of his annual take-home pay, might be sufficient for a jury to infer guilt. *See e.g.*, *United States v. Henke*, 222 F.3d 633, 639 (9th Cir. 2000) (upholding a jury conviction of insider trading based on "overall pattern of trading").

However, we need not decide whether the trading pattern in October would suffice because the trades themselves were not the only evidence presented to the jury of Heron's insider knowledge. For instance, it was established that Amkor had finalized its quarterly numbers by October 15, 2003, the day Heron began buying shares. There was also testimony that Heron would often be privy to such financial results weeks before their release to the public. The jury is entitled to draw reasonable inferences from the evidence, and we find that a jury could reasonably have concluded that Heron possessed the Q3 financial information when he traded. Heron's trading pattern in October 2003, combined with his position in the company, as well as the evidence establishing the existence of the finalized financial results permit such an inference. Although the District Court was correct in stating that there was "no direct evidence that Heron" possessed the material, non-public information at issue in Count 2, *Heron*, 525 F. Supp. 2d at 742, such direct evidence is not required. *See United States v. Stubin*, 446 F.2d 457, 461 (3d Cir.

12

1971) (citing *United States v. Powell*, 413 F.2d 843 (9th Cir. 1963)) ("Circumstantial evidence, however, may support a jury's finding of guilt."); *see also Jackson*, 443 U.S. at 319 (recognizing the jury's ability to "draw reasonable inferences").  Because a reasonable jury could have found that Heron possessed material, non-public information prior to purchasing Amkor shares in October 2003 and acted on that information, we will reverse the District Court's grant of acquittal on Count 2.

iii.    Count 4: Securities Fraud

Count 4 of the Second Superseding Indictment charges Heron with a further count of insider trading, stemming from bearish trading that he engaged in from May 20, 2004, through July 28, 2004.  Second Superseding Indictment at 14, 15, ¶¶ 2-4.  The Government alleged that at the time of his trades, Heron possessed negative information relating to Amkor.  That information included both Amkor's lackluster financial results that ultimately led to a July 1, 2004 earnings preannouncement as well as information regarding a joint business transaction with Unitive.

The District Court granted Heron's motion for acquittal on Count 4.  *Heron,* 525 F. Supp. 2d at 750.  In doing so, the Court found that Heron was in possession of material, non-public information on June 10, 2004.  However, the Court found that the Government had "failed to demonstrate that he traded on the basis of that information . . .." *Heron*, 525 F. Supp. 2d at 750.

13

We disagree with the District Court and hold that a reasonable jury could have found that Heron traded on the basis of material, non-public information that he clearly possessed. On June 11, 2004, Amkor's Chief Financial Officer informed the board that the "Q2 2004 gross margins and EPS will be significantly below Amkor's current street guidance." Within the next ten days, before the earnings information was publicly released, Heron sold 6,100 shares of Amkor. One week later, Amkor issued a preannouncement of lower-than-expected earnings. Amkor's stock price immediately declined 29%. These facts alone would have been sufficient for a jury to find beyond a reasonable doubt that Heron had engaged in insider trading based on the non-public earnings information. We will therefore reverse the District Court's grant of acquittal on Count 4.

B.      Conditional Order for a New Trial

In the absence of newly discovered evidence, a motion for a new trial must be filed within seven days of a verdict. Fed. R. Crim. P. 33(b)(2). Heron filed a motion for a new trial under Fed. R. Crim. P. 33(a) on November 14, 2007, twenty-six days after the jury's verdict. The District Court therefore properly denied Heron's motion as untimely. *Heron*, 525 F. Supp. 2d at 751. However, the District Court, acting *sua sponte*, then conditionally granted Heron a new trial under Fed. R. Crim. P. 52(b). *Id.* at 751-53. The Government appeals the conditional grant of a new trial, arguing that the District Court

14

lacked the authority to grant such a trial and that even if the Court possessed such authority, there was no "plain error" as required by Fed. R. Crim. P. 52(b).

There is some disagreement among the parties as to the appropriate standard of review for this issue. Heron argues that this case should be reviewed under the same standard as a denial of a motion for a new trial, *i.e.*, under an abuse of discretion standard. *See United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002) (stating that a district court's denial of a new trial is reviewed for abuse of discretion). The Government, on the other hand, argues that because the Court's decision was an application of proper legal rules and because the decision was not premised on a motion from the defendant, we should review the District Court's actions for plain error. We need not determine the proper standard to be applied in all cases in which a district court grants a *sua sponte* new trial, because in this case we would ultimately reverse the District Court regardless whether we adopted the Government's or Heron's preferred standard. Thus, for purposes of this case, we will adopt Heron's more deferential standard, abuse of discretion.

Fed. R. Crim. P. 33 establishes the time frame following a conviction during which a defendant may move for a new hearing. There is no dispute that Heron failed to make a motion during the permissible time period. The Court then acted on its own motion in granting the new trial. However, as the Government notes, the advisory committee notes from the 1966 amendments to Rule 33 indicate that the rule precludes a district court from precisely the action taken in this case. "The amendments . . . make it clear that a judge has

no power to order a new trial on his own motion, that he can act only in response to a motion timely made by a defendant." Fed. R. Crim. P. 33 advisory committee's note. The advisory committee notes are based on the Supreme Court's decision in *United States v. Smith*, 331 U.S. 469 (1947). *Smith* is directly on point in this case. In that case, the Court rejected the argument that a district court possessed the power to grant a new trial on its own motion when the time limit for entering a Rule 33 motion had expired. "We think that expiration of the time within which relief can openly be asked of the judge, terminates the time within which it can properly be granted on the court's own initiative." *Smith*, 331 U.S. at 475.

Thus, because the time within which Heron could have requested a new trial had passed, the District Court abused its discretion in granting a new trial on its own initiative. We will therefore reverse the District Court's conditional grant of a new trial. Because we so hold, we need not examine the question whether prosecutorial misconduct occurred in this case, a question about which we would have some doubt in any event.

C.     Sentencing

The Government also appeals the District Court's sentencing decision. We exercise plenary review of an interpretation of the guidelines and we review factual findings for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). The Government first argues that the Court erred in refusing to consider Heron's conduct related to Counts 1, 2, and 4 in determining Heron's sentence for Count 3. Because we

16

will remand this case for sentencing on all four counts in light of our decision to reverse the Court's grant of Heron's motion of acquittal, that issue is rendered moot.

The Government next argues that the District Court erred in sentencing Heron on Count 3 by refusing to apply an enhancement for abuse of a position of trust pursuant to Sentencing Guideline § 3B1.3. Heron's argument in response is that the Government waived its argument for sentencing enhancement by not properly raising it before the District Court.

We disagree with Heron and hold that the Government has not waived its argument for a sentencing enhancement under § 3B1.3. Heron makes much of the fact that the Government did not object to the absence of a reference to § 3B1.3 in the presentence report within the allotted time. *See* Fed. R. Crim. P. 32(f)(1) (allowing fourteen days to object to a presentence report). However, the Government made it clear in its memorandum in response to the presentence report that it was not objecting to the absence of § 3B1.3 only because that section could not be applied in a case in which an enhancement under § 2B1.1(b)(15)(a) was being sought. The Government argued that the "guidelines avoid duplication by making § 3B1.3 inapplicable so that there is not a second enhancement for abuse of position where § 2B1.1(b)(15)(A) applies."

Furthermore, Fed. R. Crim. P. 32(i)(1)(D) permits courts to consider "a new objection" at sentencing. The Government clearly made its § 3B1.3 argument at the

17

sentencing hearing, a fact that Heron does not dispute. Thus, the Government did not waive its argument for a sentencing enhancement under § 3B1.3 for Count 3.

Turning to the merits of the Government's argument, it is apparent that § 3B1.3 applies to Count 3. "Section 3B1.3 should be applied only if the defendant occupied and abused a position of special trust. Examples might include . . . an attorney who misused information regarding a planned but unannounced take over attempt." U.S. Sentencing Guidelines Manual § 2B1.4 app. note 1. As the chief insider trading compliance officer of a publicly traded corporation convicted of insider trading, Heron clearly fits within the category of position of trust envisioned by the Sentencing Guidelines. Thus, the Court erred in its decision not to apply a sentencing enhancement on Count 3.

III. Conclusion

For the foregoing reasons, we will reverse the District Court's grant of Heron's motion for judgment of acquittal on Counts 1, 2, and 4 and reinstate the jury's verdict on those counts. We will also reverse the Court's grant of a conditional new trial on Counts 1, 2, and 4. We finally will reverse the District Court's sentencing decision as to Count 3. We therefore will remand this case to the District Court for sentencing on all four counts in accordance with this opinion.